IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTHERN GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| STEPHEN COWART, JOSEPH HURST and KENNETH RAHN, JR., | |
| Plaintiffs, | |
| v. | |
| ILA LOCAL 1475 CLERKS AND CHECKERS UNION, INC., GEORGIA STEVEDORE ASSOCIATION, BENNY HOLLAND JR., RICKY DELOACH, FRANK RYAN JR., STEVE SIMS, NORMAN MASSEY, TRACY O'CONNELL, MICHAEL PARSONS, DENNIS DAGGETT, ALAN ROBB, HAROLD DAGGETT, AND John Does 1-10, | CIVIL ACTION FILE NUMBER:  4:25-cv-00199 |
| Defendants. | |

## DEFENDANT TRACY O'CONNELL, ESQ.'S MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW, Defendant Tracy O'Connell, Esq. and pursuant to Fed. R. Civ. P. 12(b)(6) files her Motion to Dismiss and Brief in Support, showing this Honorable Court as follows:

### FACTS

Plaintiffs state that they are "rank-and file members of the International Longshoremen's Association (ILA) Local 1475 Clerks and Checkers Union, Inc. *See* Plaintiffs' Complaint, Doc. 1-1, at p. 6, ¶ 19. Plaintiffs brought suit against Defendant Tracy O'Connell, Esq. on June 9, 2025, alleging that Defendant O'Connell engaged in a civil conspiracy to "defraud" the Plaintiffs and accomplish the "unlawful purpose of discriminating against Deck and Dock workers and depriving them of fair representation, equal benefits, and equal employment opportunities within the same union." *See id.* at p. 22, ¶¶ 71-73. According to Plaintiffs' allegations, the "civil conspiracy" in

which Defendant O'Connell was involved aimed to "extract maximum value from Deck and Dock workers while providing minimum benefits in return, and to protect and enhance the benefits and opportunities available to traditional Clerks and Checkers at the expense of Deck and Dock workers." *Id*. at p. 23, ¶ 74. As the factual basis for their allegations of civil conspiracy against Defendant O'Connell and between her, her client Georgia Stevedore Association, ("GSA"),  and the other Defendants named in paragraph 72 of the Complaint, Plaintiffs point to a letter sent by Defendant O'Connell on August 27, 2020, while acting in her capacity as counsel for Defendant GSA, "expressing the viewpoint that Deck and Dock work does not belong in the Clerks and Checkers union." *See id*. at p. 10, ¶ 31 and p. 64,"Exhibit D". Crucially, Plaintiffs allege and acknowledge that Defendant O'Connell is Defendant GSA's attorney. *See id.* at p. 10,  ¶ 31.

The claims against Defendant O'Connell are for civil conspiracy to commit unfair practices aimed at depriving Plaintiffs of the full benefits of union membership. *See id*. at pp. 22-24,  ¶¶ 71-76. These allegations arise from provisions of the Collective Bargaining Agreements (CBAs) between ILA Local 1475 and GSA, the 2013 and 2019 memorandums of understanding. *See id*. at pp. 8-9, ¶¶ 25-29, pp. 10-11, ¶¶ 33-35, pp.15, ¶ 48, pp. 23-24, ¶75, pp. 24-25, ¶ 80, p. 29, ¶¶ 93 and at Exhibits A and B found at pp. 34-43 and pp. 44-61 respectively. As such, the resolution of Plaintiffs' claims requires interpretation of the aforementioned CBAs and said claims are preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Should the Court determine that Plaintiffs' claims are not preempted, Plaintiffs have failed to exhaust the grievance process set out in the CBAs before bringing their claims and so their claims are barred.  Plaintiffs have failed to state a claim upon which relief can be granted, and even if they have alleged sufficient claims, they failed to bring them within the applicable statutes of limitations period. Finally, nowhere in Plaintiffs' Complaint is it alleged that Defendant O'Connell engaged

in any action that was outside the scope of her representation of Defendant GSA, nor that any action taken by Defendant O'Connell was for her own personal benefit, gain, or interests separate from those of her client. Because Plaintiffs' claims are preempted by section 301 of the LMRA, barred by Plaintiffs' failure to exhaust the grievance procedures provided by the CBA, barred by the applicable statutes of limitations, and because the actions of an attorney, taken within the scope of representation of a client, cannot form the basis for an allegation of conspiracy, Plaintiffs' claims against Defendant Tracy O'Connell, Esq. must be dismissed.

## APPLICABLE STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). However legal conclusions, unwarranted factual deductions and conclusory statements are not entitled to such deference. *Iqbal*, 556 U.S. at 663, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-1206 (11th Cir. 2007). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal

conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Although "detailed factual allegations" are not required, Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

While ordinarily presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," the "complete preemption" doctrine exists as an independent corollary rule whereby the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The complete preemption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims preempted by section 301 of the LMRA. *Id.* Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3, (1987); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Whether the LMRA preempts a state law claim is a question of law. *Lightning v. Roadway Express*, 60 F.3d 1551, 1556 (11th Cir.1995).

## ARGUMENT AND CITATION TO AUTHORITY

**I.      Plaintiffs' claims are preempted by Section 301 of the LMRA.**

Section 301 of the LMRA, 29 U.S.C. § 185, provides for federal jurisdiction of suits between employers and labor unions alleging violations of a collective bargaining agreement. According to the Supreme Court "§ 301 expresses a federal policy that the substantive law to apply in § 301 cases is federal law, which the courts must fashion from the policy of our national labor laws." *Allis-Chalmers Corp.*, 471 U.S. at 209. The Supreme Court has expanded the preemptive effect of § 301 "beyond suits alleging contract violations," holding that

> questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance....

*Id.* at 210-211; *see also United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990)("[T]he preemptive force of § 301 extends beyond state law contract actions."); *Williams*, 482 U.S. at 394 (In addition to claims that are predicated on rights created under CBAs, the complete preemption doctrine extends to claims that are "substantially dependent on analysis of a collective-bargaining agreement.).

*Allis-Chalmers* involved a state law tort claim alleging bad faith handling of an insurance claim under a disability policy established by a collective bargaining agreement. Because "any attempt to assess liability [in the case] inevitably will involve contract interpretation," the Supreme Court held that "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor agreement, that claim must either be treated as a § 301 claim, *see Avco Corp. V. Aero Lodge 735*, 390 U.S. 557 (1968), or dismissed as preempted by federal labor contract law." *Allis-Chalmers*, 471 U.S. at 219-220. The Supreme

Court determined that the plaintiff's state tort claim "should have been dismissed for failure to make use of the grievance procedure established in the collective bargaining agreement, [] or dismissed as preempted by § 301." *Id.* at 220-221.

The Eleventh Circuit has repeatedly applied the § 301 preemption doctrine to dismiss state law contract or tort claims that are "inextricably intertwined" with interpretation of a collective bargaining agreement. *See, e.g., United Steel, etc. Workers v. Wise Alloys, LLC*, 642 F.3d 1344 (11th Cir. 2011) (tort claim of misrepresentation/fraud); *Palmer v. Local 8285, United Steel Workers*, 234 Fed.Appx. 884 (2007) (defamation, negligent supervision, and intentional infliction of emotional distress); *Bartholomew v. AGL Resources*, 361 F.3d 1333 (11th Cir. 2004) (breach of contract, intentional infliction of emotional distress, and tortious interference and defamation claims arising prior to plaintiffs' termination); *Darden v. United States Steel Corp,* 830 F.2d 1116 (11th Cir. 1987) (claims of breach of contract, false representations, conspiracy, and conversion); *Atwater v. National Football League Players Ass'n*, 626 F.3d 1170 (11th Cir. 2010) (claims of negligent investment, negligent misrepresentation and breach of fiduciary duty); *Moon v. Goodyear Tire & Rubber Co*., 519 Fed.Appx. 620 (11th Cir. 2013) (claims of unjust enrichment and fraud).

In deciding whether state law tort claims require interpretation of the terms of a labor contract, "courts in the Eleventh Circuit look to the elements of the state law claims." *Crowne Investments, Inc. v. Food and Commercial Workers, Local 1657*, 959 F.Supp. 1473 (M.D.Ala. 1997), citing *Lightning*, 60 F.3d at 1557. Georgia law does not recognize an independent tort of "conspiracy," rather, a conspiracy is a combination between two or more persons to do some act which is a tort or else to do some lawful act by unlawful methods. *See Cook v. Robinson*, 216 Ga. 328, 328 (1960). Therefore, the gist of the action is not the conspiracy alleged, but the tort

committed against the plaintiff and the resulting damage. *Id.*; *McIntee v. Deramus*, 722 S.E.2d 377, 379 (2012). Absent the underlying tort, there can be no liability for civil conspiracy. *Jenkins v. Wachovia Bank, Nat. Assn.*, 309 Ga. App. 562, 567 (2011). "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Bowden v. Med. Center, Inc.*, 309 Ga. 188, 199, n. 10 (2020).

Plaintiffs' claim that Defendant O'Connell conspired to defraud them of the full benefits of union membership and deprive them of fair representation, equal benefits, and equal employment opportunities within the union. Doc. 1-1 at pp. 22-24, ¶¶ 72-76. Plaintiffs allege that Defendant O'Connell committed numerous overt acts in furtherance of this conspiracy including "creating and implementing the discriminatory 2013 Memorandum of Understanding (MOU)[1] that established a separate and unequal seniority system", "making false statements to the NLRB", and "implementing disproportionate disciplinary actions against Deck and Dock workers." *Id.* at pp. 23-24, ¶ 75. Though Defendant O'Connell does not concede that Plaintiffs have properly alleged an actionable civil conspiracy, she anticipates that Plaintiffs are likely to argue that their conspiracy claims against her are grounded in alleged fraud. *See id.* at p. 22, ¶ 72. While Plaintiffs have not alleged the necessary elements of fraud in their claims against Defendant O'Connell and so have failed to state a claim upon which relief can be granted given civil conspiracy relies on the existence of an underlying tort, any substantive evaluation of this conspiracy claim against Defendant O'Connell, based in fraud or otherwise, necessarily involves an analysis of the labor agreements and the rights and obligations which flow from the same, meaning the claim is

---

[1] The memorandums of understanding are agreements between employers and a labor organization and therefore are contracts within the meaning of Section 301 of the LMRA. *See Retail Clerks Int'l Ass'n v. Lion Dry Goods*, 369 U.S. 17, 28-29 (1962).

inextricably intertwined with interpretation of a collective bargaining agreement and so preempted under section 301 warranting dismissal. *See Wise Alloys, LLC,* 642 F.3d 1344, 1351[2]; *see also Bartholomew* , 361 F.3d at 1338-1342; *Allis-Chalmers*, 471 U.S. at 220-221.

Although Plaintiffs' claims have been brought against Tracy O'Connell, Esq., who is not a party to the CBAs, the relevant question for preemption purposes is whether Plaintiffs' state-law claims asserted against her would require the Court to apply or interpret the CBAs. *See Atwater*, 626 F.3d at 1178. If such application or interpretation is required, regardless of a party's status vis-à-vis the CBA, the claims are preempted. *See id.* citing *Baker v. Farmers Elec. Coop., Inc*., 34 F.3d 274, 277, 282–84 (5th Cir.1994) (noting, in holding that § 301 preempted state-law tort claim asserted against employer's manager, that "courts have governed their determinations on ... preemption by the necessity of referring to a CBA for resolution of the claim rather than by the individual status of the defendant [.]"); *see also Foy v. Giant Food Inc*., 298 F.3d 284, 287, 289 n. 4 (4th Cir.2002) (holding question of whether § 301 preempted a state-law tort claim asserted against a co-worker turned, not on whether he was a signatory to the CBA, but on whether resolution of the claim required interpretation of the CBA); *Int'l Union, United Mine Workers v. Covenant Coal Corp*., 977 F.2d 895, 895–96, 899–900 (4th Cir.1992) (holding § 301 preempted state-law claim against non-signatory employer for tortious interference with a CBA); *Stringer v. Nat'l Football League*, 474 F.Supp.2d 894, 898–99, 901–02 (S.D.Ohio 2007) (holding nonsignatories to CBA—the NFL, NFL Properties, LLC (which licensed and promoted NFL football equipment), an NFL official and two football equipment manufacturers—could raise §

---

[2] Applying Alabama law and finding that in order to determine if any fraud occurred, at a minimum there must be a determination made of the intended interpretations of the labor agreements at issue.  Under Alabama law recovery for fraud requires showing (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. *Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1988)).

301 preemption as a defense to plaintiffs' state-law claims); *Mullins v. Int'l Union of Operating Eng'rs Local No. 77*, 214 F.Supp.2d 655, 668 (E.D.Va.2002) (noting, in addressing an employee's tort claims against employer, its president and several co-workers, that § 301 "preempts state law claims against non-signatories where interpretation of the [CBA] is required for resolution"), aff'd, 60 F. App'x 510 (4th Cir.2003) (unpublished); *Golden v. Kelsey–Hayes Co.*, 878 F.Supp. 1054, 1056–57 (E.D.Mich.1995).

For the reasons stated above, Plaintiffs' claims against Defendant O'Connell are preempted under section 301 of the LMRA and must be dismissed. *Allis-Chalmers*, 471 U.S. at 220-221.

## II.    Plaintiffs' claims are barred by failure to exhaust grievance procedures.

An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act. *Clayton v. International Union, United Auto., Aerospace, and Agr. Implement Workers of America*, 451 U.S. 679, 681 (1981) citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-653 (1965). For the purposes of the LMRA, an employer includes any person acting as an agent of an employer, directly or indirectly. *See* 29 U.S.C. § 152; *see also Hester v. International Union of Operating Engineers, AFL-CIO,* 941 F.2d 1574, 1580 n.7 (11th Cir. 1991)(recognizing the 29 U.S.C. § 152 sets out the definition of "employer" under the LMRA). An attorney is the agent of their client, and here Defendant O'Connell was an agent of GSA as she was their attorney when taking the alleged actions which form the basis for Plaintiffs' conspiracy claims and when sending the letter referenced in Plaintiffs' Complaint. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)( The

attorney-client relationship is widely recognized as an agency relationship: the client is the principal and the attorney is her agent.); Restatement 2d Agency § 14 cmt. b (1958).

Plaintiffs allege that Defendant O'Connell conspired to create and implement a "discriminatory" seniority system. See Doc. 1-1 at p. 23,¶ 75. Per the CBAs, seniority is to be enforced and decided on a local basis under the Savannah Clerks and Checkers Seniority Plan dated April 1, 2019. Doc. 1-1, pg. 44-52, Exhibit B. The Seniority Plan provides any dispute shall be referred to the Seniority Board and any determination by the board shall be final and binding Doc. 1-1, pg. 44, ¶ 2. If the Seniority Board cannot reach a determination, the dispute must be resolved under the procedures established under Clause 15(B) of the CBA. *Id*. The Complaint fails to allege that any grievance was filed, let alone that the process in place for such disputes was exhausted before Plaintiffs brought their claims. *See generally* Doc. 1-1. As such, Plaintiffs' claims are barred.

### III.    Plaintiffs' claims are barred by the six-month statute of limitations applicable to their claims.

The Supreme Court has held the six-month statute of limitations contained in Section 10(b) of the NLRA applies to "hybrid" Section 301 suits. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 (1983). A hybrid Section 301 suit is "a suit... against an employer and a union, alleging that the employer... breached a provision of a collective bargaining agreement, and that the union... breached its duty of fair representation...." 462 U.S. at 154. Here, Plaintiffs have sued both their employers and the ILA Local 1475 Clerks and Checkers Union, making this a hybrid suit.

"[A] cause of action accrues under Section 301, and the [six-month] statute of limitations begins to run, when in the exercise of reasonable diligence the claimant knew or should have known of the injury." *Hill v. Georgia Power Co*., 786 F.2d 1071, 1074-75 (11th Cir. 1986). In the present case, Plaintiffs' Complaint, on its face, does not allege any action of which they complain

occurring after 2022, well over six months before the filing of Plaintiffs' Complaint on June 9, 2025. As such, Plaintiffs' claims are barred and should be dismissed.

### IV.    Plaintiffs have failed to state a plausible claim for relief.

Assuming *arguendo* that Plaintiffs' claims against Defendant O'Connell are not preempted under section 301 of the LMRA or barred by failure to exhaust grievance procedures or the six month statute of limitations, Plaintiffs' claims are state law claims subject to supplemental jurisdiction under 28 U.S.C. § 1367(a). They are so related to the federal claims in the action that they form part of the same case or controversy being that they arise from the same common nucleus of operative facts as Plaintiffs' federal claims - the negotiations, agreements, and implementation of agreements between the employers and the labor union - and the handling of the claims by this Court would promote judicial economy and procedural convenience. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-726 (1966). Moreover, none of the circumstances outlined by 28 U.S.C. § 1367(c) would support this Court declining supplemental jurisdiction as the claims raised by Plaintiffs do not involve novel or complex issues of State law; Plaintiffs' single claim against Defendant O'Connell does not predominate over the claims over which this Court has original jurisdiction;  this Court has not dismissed all claims over which it has original jurisdiction; and finally there exist no compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c); *see City of Chicago*, 522 U.S. at 173.

Should the Court determine that the bases for dismissal explained above are unavailing, this Court should exercise supplemental jurisdiction over these claims as explained above and dismiss them for failure to state a claim.

Plaintiffs have alleged that Defendant O'Connell engaged in a civil conspiracy, along with others, to defraud them and other Deck and Dock workers of the full benefits of union membership relating to seniority and compensation. *See* Doc. 1-1 at p. 22,¶ 72. The alleged conspiracy was to discriminate against Plaintiffs and other Deck and Dock workers thus depriving them of fair representation, equal benefits and equal employment opportunities. *Id.* at p. 22-23, ¶ 72. Georgia law does not recognize an independent tort of "conspiracy," rather, a conspiracy is a combination between two or more persons to do some act which is a tort or else to do some lawful act by unlawful methods. *See Cook*, 216 Ga. at 328. Therefore, the gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. *Id.*; *McIntee*, 722 S.E.2d at 379. Absent the underlying tort, there can be no liability for civil conspiracy. *Jenkins*, 309 Ga. App. at 567. Plaintiffs have alleged that Defendant O'Connell has engaged in a civil conspiracy of discrimination, deprivation of fair representation, equal benefits and employment opportunities. Doc. 1-1, pp.22-23, ¶¶ 72-74. No underlying tortious behavior has been pled, nor has any allegation been made that Defendant O'Connell has combined with another to do some lawful act by unlawful means.[3] As such, Plaintiffs' conspiracy claims fail and should be dismissed.

Should Plaintiffs attempt to argue that the conspiracy alleged against Defendant O'Connell is based in fraud, Plaintiffs have failed to comply with the heightened pleading standard of Fed. R. Civ. P. 9(b). When alleging fraud, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Fortson v. Best Rate Funding, Corp.*, 602 Fed.Appx. 479, 482 (11th Cir. 2015) citing *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1291 (11th Cir.2010). Under Rule 9(b), a plaintiff must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in

---

[3] In fact, the factual basis for the claims against Defendant O'Connell, her drafting and sending of the letter on behalf of her client GSA in her capacity as their attorney, is undoubtedly a lawful act.

which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Id.* Put another way, to satisfy the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b), a plaintiff bringing a fraud claim must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1324 (11th Cir.2009) (quotation marks omitted). Moreover, "[i]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations lumping multiple defendants together are insufficient." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-1317 (11th Cir. 2007) (analyzing RICO claims which are "essentially a certain breed of fraud claims" subject to the same pleading standards as fraud claims under Fed. R. Civ. P. 9(b).).

Plaintiffs have failed to allege any fraud with specificity – instead the Complaint contains "only conclusory allegations and fails entirely to identify specific instances of fraud or misrepresentation, the parties responsible for the alleged fraud or misrepresentation, or Defendant's roles in the alleged fraud or misrepresentation." *Fortson,* 602 Fed.Appx. at 482-483. Even if Plaintiffs seek to assert their conspiracy claim against Defendant O'Connell is based in fraud, they have failed to plead their claims with particularity as required by Fed. R. Civ. P. 9(b) requiring dismissal. *Id.*

**V.    Plaintiffs' state-law claims are barred by the applicable statute of limitations.**

Continuing to assume *arguendo* that Plaintiffs' claims against Defendant O'Connell should not be dismissed on the grounds provided above, this Court should exercise supplemental jurisdiction over these claims as explained above and the claims should be dismissed as they are barred by the applicable statute of limitations.

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013)(internal alterations omitted); *see also Mesones v. Estevez*, No. 19-14119, 2021 WL 3721324, at *2 n.2 (11th Cir. Aug. 23, 2021)(noting that statute of limitations defense may be raised on a motion to dismiss when "it is clear from the face of the complaint that the statutory period has expired"); *Foster v. Savannah Commc'n,* 140 F. App'x 905, 907 (11th Cir. 2005)(holding that, although a statute of limitations defense is generally an affirmative defense that must be pled, failure to comply with the statute of limitations may be raised on a Rule 12(b)(6) motion to dismiss "when failure to comply with the statute of limitations is plain on the face of the complaint").

When a federal court exercises supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, it must apply state substantive law. *See Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir.1987); *Earthcam, Inc. v. OxBlue Corporation*, 658 Fed.Appx. 526, 529 (11th Cir. 2016); *see also Gibbs*, 383 U.S. at 726 (indicating that the Erie doctrine applies to supplemental state claims litigated in federal courts). State statutes of limitations are substantive law. *Wilson v. Hearos, LLC*, 128 F.4th 1254, 1264 (11th Cir. 2025).

The statute of limitations period for a conspiracy claim in Georgia is measured by the underlying tort. *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695 (1996); *Lee v. Gore*, 221 Ga.App. 632, 635 (1996). While maintaining that Plaintiffs have failed to plead any underlying tort to support their state-law civil conspiracy claims, should Plaintiffs attempt to argue that the conspiracy alleged against Defendant O'Connell is based in fraud given the use of the word "defraud" in their complaint, any fraud claim is time-barred. *See* Doc. 1-1 at p. 22, ¶ 72.  The

statute of limitation for claims of fraud is four years. *Hamburger v. PFM Capital Management, Inc.*, 286 Ga.App. 382, 387 (2007) citing O.C.G.A. § 9–3–31; *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga.App. 416, 417 (2004); *Green v. White*, 229 Ga.App. 776, 780 (1997).

Plaintiffs have come forth and alleged that Defendant O'Connell engaged in the conspiracy to defraud them through her actions of sending the letter, attached to Plaintiffs' Complaint as Exhibit D, on behalf of her clients Defendant GSA "expressing the viewpoint that Deck and Dock work does not belong in the Clerks and Checkers union." Doc. 1-1 at p. 10, ¶ 31 and p. 64. This letter, attached to and incorporated into Plaintiffs' Complaint, is dated August 27, 2020, over four years before the filing of Plaintiffs' Complaint on June 5, 2025. *See id*. at Exhibit D, p. 64. Taking the last overt act of any "conspirator", Defendant ILA Local 1475 issued a report by the Executive Council on June 4, 2021, and decided to appoint a committee to investigate "seniority issues." *See id*. at p. 11, ¶ 37. This act took place over four years before the filing of Plaintiffs' Complaint.[4] As such, Plaintiffs' claims against Defendant O'Connell are time-barred and should be dismissed. *See* O.C.G.A. § 9-3-31.

### VI. Defendant O'Connell's actions, taken within the scope of representation of her client GSA, cannot form the basis for an allegation of civil conspiracy.

In the alternative, Plaintiffs' claims against Defendant O'Connell should be dismissed as Defendant O'Connell's actions in representing her client, GSA, cannot form the basis for an alleged civil conspiracy.

---

[4] To the extent Plaintiffs' Complaint can be read to allege "overt acts" being taken in 2022 by Local 1475 through "submitting false statements" on various issues to the NLRB (*see* Doc. 1-1 at p.15, ¶¶ 48,49) , Defendant O'Connell shows that under Georgia law any written or oral statements made before ,or in connection with an issue under consideration or review by, a legislative, executive, or judicial body, or any other official proceeding authorized by law is privileged and cannot serve as the basis for a claim against the speaker. *See* O.C.G.A. § 9-11-11.1(c)(1)-(2); *see also Metzler v. Rowell*, 248 Ga.App. 596, 598 (2001); *Giraldi v. Bowen*, 374 Ga.App. 347, 356 (2025). As such the last overt acts of any conspiracy defendant should be found to have occurred on June 4, 2021.

Georgia law does not recognize an independent tort of "conspiracy," rather, a conspiracy is a combination between two or more persons to do some act which is a tort or else to do some lawful act by unlawful methods. *See Cook*, 216 Ga. at 328. Therefore, the gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage. *Id.* To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort. *McIntee*, 722 S.E.2d at 379. Generally, principals and agents cannot conspire with one another. Restatement (Third) of Torts: Liab. for Econ. Harm § 27 comment (d) (2020). While the most common application of this general principle of law is the "intracorporate conspiracy doctrine"[5], another "recurring setting" for this principle is its application to conspiracy claims based on an attorney client relationship. *See id*. A lawyer is a client's agent and to be held liable for participating in a conspiracy, the lawyer must be shown to have acted outside that capacity— in other words, in a capacity other than as the client's counsel and representative. *Id.* As a practical matter, this means the lawyer must have agreed to join in committing a wrong that entailed a breach of the lawyer's own duty to the victim and that benefited the lawyer as well as the client. *Id*. The benefit to the lawyer must have been something more than the receipt of fees for professional services. *Id.*

The general principles of law outlined above have been recognized by the Eleventh Circuit Court of Appeals, with the seminal case on the issue being *Farese v. Scherer*, 342 F.3d 1223 (11th Cir. 2003). In *Farese,* the Eleventh Circuit considered a § 1985 claim against a majority

---

[5] This doctrine stands for the proposition that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *McAndrew v. Lockheed Martin Corp*., 206 F.3d 1031, 1035 (11th Cir. 2000) (en banc).

shareholder and his attorneys, alleging that they "participated in conspiracies to intimidate, threaten, injure, and treat [the plaintiff] adversely in an effort to force him to withdraw his prior lawsuits against [the majority shareholder]." 342 F.3d at 1225-26. The plaintiff also alleged that the defendant "engaged in a conspiracy with [his attorneys] to bring frivolous suits against [the plaintiff's] family members" in an effort to intimidate him. *Id*. at 1230.

The Eleventh Circuit held "that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *Id*. at 1232; *see also Chance v. Cook*, 50 F.4th 48, 51-52 (11th Cir. 2022). The Eleventh Circuit reasoned that although the intracorporate conspiracy doctrine is similar to and at first glance appears to provide "a convenient analogy for the attorney-client situation, there are important differences between the agency relationships involved in private corporate activities and those arising in the practice of law." *Farese*, 342 F.3d at 1232 n.10 (citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3rd Cir. 1999)). The court did, however, hold that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a [ ] conspiracy." *Steed v. EverHome Mortgage Company*, 2007 WL 9703392 at *3 (N.D.Ga., 2007) (citing *Farese*, 342 F.2.d at 1232). The court noted "that it is 'axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy.'" *Id*. at 1231. The Eleventh Circuit cautioned "that the scope of the attorney-client relationship is broad and that even if the challenged activity violates the canons of ethics, so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985." *See id.* (internal quotation marks omitted).

While *Farese* dealt with a conspiracy under 42 U.S.C. § 1985, the opinion has been applied to dismiss conspiracy allegations between parties and their counsel outside of the § 1985 context. *See Steed*, 2007 WL 9703392 at *3 (citing to *Farese* in dismissing "fraudulent conspiracy" allegations made by a Plaintiff against counsel for Defendants under federal and Georgia law); *see also O'Boyle v. Sweetapple*, 2015 WL 13574304 (S.D.Fla., 2015) (applying *Farese* in the context of allegations of conspiracy made under 42 U.S.C. § 1983).

The general principles of agency law espoused above hold true when analyzing and applying Georgia agency law. The Court of Appeals of Georgia has recognized the intra-corporate conspiracy doctrine. *See Factory Direct Wholesale, LLC v. Office Kick, Inc.,* 2023 WL 2244694 at *10 (S.D.Ga., 2023); *Strickland v. Chase Bank USA, Nat'l Ass'n*, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712256, at *15 n.18 (N.D. Ga. July 2, 2009) (quoting *Alta Anesthesia Assocs. of Ga., P.C. v. Gibbons,* 537 S.E.2d 388, 394 (2000)), report and recommendation adopted, No. 1:08-CV-3270-WSD-RGV, 2009 WL 10712252 (N.D. Ga. Aug. 24, 2009); *see Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1382 (M.D. Ga. 2004) ("Georgia courts are clearly unwilling to recognize claims of 'intra-corporate' conspiracies.") (citing *Nalley Northside Chevrolet, Inc. v. Herring*, 450 S.E.2d 452, 455 (1994)). The aforementioned cases shed light on the fact that Georgia courts applying Georgia law recognized the inability of an agent (employees of corporations) to conspire with their principal (the corporation itself). *See Herring* 450 S.E.2d at 455.

As applied to this case, Plaintiffs have alleged that Tracy O'Connell has engaged in a civil conspiracy alongside her client GSA and others on the basis of the August 27, 2020, letter she sent on behalf of, while representing, and while acting as an agent of GSA, espousing GSA's position on hotly contested matters and issues. *See* Doc 1-1 at p. 10, ¶ 31, pp. 22-24, ¶¶ 71-76, p. 64. This conduct clearly falls within the scope of Attorney O'Connell's representation of GSA, so much so

that Plaintiffs acknowledged and alleged that Attorney O'Connell was the attorney for GSA and attached a letter, which explicitly outlines that it is being sent by Attorney O'Connell on behalf of her clients, to their Complaint. *See id* at p. 10, ¶ 31 and Exhibit D, p. 64. Moreover, Plaintiffs have failed to allege that Attorney O'Connell's actions were taken outside the scope of representation or were done to further her own personal interests rather than those of her client. As such, Plaintiffs should be barred from attempting to use actions taken by Attorney O'Connell in furtherance of representing a client to form the basis for an allegation of conspiracy. *See Farese* 342 F.3d at 1232-33.

Although there are cases involving claims against an attorney and their client for conspiracy which have been held to be valid in Georgia, these cases occurred in contexts vastly different to those before this Court. *See Davidson v. Collier*, 104 Ga.App. 546 (1961) (conspiracy alleged against an attorney and their clients by co-counsel relating to payment of an agreed sum for services rendered); *see also Rodgers v. Dupree*, 340 Ga.App. 811 (2017) (recognizing allegations of conspiracy against attorneys and their clients based on illegal conduct - the making of an illegal video, theft of financial information, public disclosure of private facts, and extortion.). The Court in *Rodgers* recognized that there is a "fundamental difference between alleged criminal and tortious acts done in furtherance of litigation, and acts done in furtherance of litigation that, although bothersome, are arguably legitimate." *Id.* at 819. Under Georgia law, "where the act of conspiring is itself legal, the means or method of its accomplishment must be illegal." *Savannah College of Art & Design v. School of Visual Arts of Savannah*, 219 Ga.App. 296, 297 (1995). Plaintiffs essentially argue that Defendant O'Connell's representation of GSA is illegal. In Judge Barnes' concurrence in part and dissent in part in *Rodgers*, she recognizes that "[a] plaintiff cannot use a conspiracy theory to hold an attorney liable for joining a legal team and advocating for his

client." 340 Ga.App. at 838. The aforementioned cases do not involve allegations of conspiracy against an attorney being brought, or upheld, based upon lawful actions of the attorney taken during the representation of a client. However, based on Georgia courts recognizing the inability of an agent to conspire with their principal, the claims against Defendant O'Connell must be dismissed as she is incapable of participating in a conspiracy with her client. *See* Herring 450 S.E.2d at 455.

There is similarly a wealth of case law from other jurisdictions which supports the conclusion that the actions of an attorney, acting within the scope of their representation of a client, cannot form the basis for conspiracy. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 181 (Fla. Dist. Ct. App. 2000) (affirming directed defense verdict on civil conspiracy claim where there was no proof that attorney had "a personal stake" in the alleged aim of the conspiracy); *Born v. Hosto & Buchan*, 372 S.W.3d 324, 332 (Ark. 2010)( Adopting the reasoning of *Heffernan* that, generally, there can be no civil conspiracy between an attorney and his client for actions undertaken in the furtherance of the legal representation); *Art Capital Grp., LLC v. Neuhaus*, 896 N.Y.S.2d 35 (N.Y. App. Div. 2010); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App. 2005); *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764 (Mo. Ct. App. 2003); *Stiles v. Onorato*, 457 S.E.2d 601 (S.C. 1995) (an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client); *Fraidin v. Weitzman*, 611 A.2d 1046 (Md. Ct. Spec. App. 1992)( attorney liable for conspiracy if actively involved in wrongful conduct). *Bosak v. McDonough*, 549 N.E.2d 643 (Ill. App. Ct. 1989).

Because Attorney O'Connell was acting within the scope of her representation of GSA when sending the letter which forms the basis for Plaintiffs' allegations against her, she is immune

from allegations of conspiracy warranting dismissal of the claims against her for failure to state a claim upon which relief can be granted. The need for dismissal of Plaintiffs' claims is underscored by the fact that no allegation is made that any of the actions taken by Attorney O'Connell were outside the scope of her representation of her clients or were taken for her personal benefit, rather than for the benefit of her clients. Put plainly, Attorney O'Connell has been sued for simply representing a client and advancing her clients' interests and viewpoints with which Plaintiffs disagree.

### VII.    Because Plaintiffs claims of civil conspiracy against Defendant O'Connell fail, any punitive damages claim raised by Plaintiffs against Defendant O'Connell fail as well.

Because the claims against Defendant O'Connell fail, any claims by Plaintiffs for punitive damages against her must similarly fail. Count VI of Plaintiffs' Complaint – "Punitive Damages" alleges that by

> engaging in the bad faith and willful conduct complained of herein, the Defendants acted with the specific intent to cause harm. Their actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences, thereby entitling Plaintiffs to recover punitive damages in an amount to be determined at trial to deter such wrongful conduct in the future.

Doc. 1-1 at p. 30, ¶ 98. While not citing to any statutory provision in support of their punitive damages claim based in bad faith and willful misconduct this claim tracks the language of O.C.G.A. § 51-12-5.1 which allows for punitive damages to be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Under Georgia law, if the plaintiffs fail to prove the allegations compromising the underlying tort, punitive damages may not be recovered. *Clarke v. Cox*, 197 Ga. App. 83, 84 (1990); *see Bartenfeld v. Chick-fil-A,* 346 Ga. App. 759, 769 (2018) ("Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails."). To the extent that Plaintiffs' claim for punitive damages cited above applies to Attorney O'Connell, as explained above, the claims against Attorney O'Connell cannot stand and so any claim for punitive damages against Attorney O'Connell based on the civil conspiracy allegations by Plaintiffs fail as well.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Defendant Tracy O'Connell, Esq. must be DISMISSED.

RESPECTFULLY SUBMITTED THIS 16th day of September, 2025.

**HALL BOOTH SMITH, P.C.**

3528 Darien Highway, Suite 300
Brunswick, GA 31525
T: (912) 554-0093
F: (912) 554-1973
E-mail: jdurham@hallboothsmith.com
E-mail: fkloc@hallboothsmith.com

*/s/ James B. Durham*
JAMES B. DURHAM
Georgia Bar No. 235526
FELIX B. KLOC
Georgia Bar No. 920613
*Counsel for Defendant O'Connell*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties who have appeared in this action a true and correct copy of the foregoing via the Court's electronic filing system with a copy of the foregoing also being served via electronic mail as follows:

Bryan J. Henderson, Esq.
Guilmette Henderson, LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, GA 30309
bryan@guilmettehenderson.com

This  16th day of September, 2025.

**HALL BOOTH SMITH, P.C.**

3528 Darien Highway, Suite 300          */s/ James B. Durham*
Brunswick, GA 31525                      JAMES B. DURHAM
T: (912) 554-0093                        Georgia Bar No. 235526
F: (912) 554-1973                        FELIX B. KLOC
E-mail: jdurham@hallboothsmith.com       Georgia Bar No. 920613
E-mail: fkloc@hallboothsmith.com         *Counsel for Defendant O'Connell*