## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| STEPHEN COWART, JOSEPH HURST, and KENNETH RAHN, JR., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:25-cv-00199-RSB-CLR |
| ILA LOCAL 1475 CLERKS AND CHECKERS UNION, INC., GEORGIA STEVEDORE ASSOCIATION, BENNY HOLLAND, JR., RICKY DELOACH, FRANK RYAN, JR., STEVE SIMS, NORMAN MASSEY, TRACY O'CONNELL, MICHAEL PARSONS, DENNIS DAGGETT, ALAN ROBB, HAROLD DAGGETT, and JOHN DOE(S) 1-10, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF LOCAL UNION DEFENDANTS'
## MOTION TO DISMISS

Comes now Defendants ILA Local 1475 Clerks and Checkers Union, Inc., (herein "Local 1475"), Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons (collectively "Local Union Defendants") by and through their undersigned counsel, without waiving any applicable defenses, and submits this Brief in Support of Local Union Defendants' Motion to Dismiss.

The Local Union Defendants submit this Motion pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiffs' claims are preempted by §301 of the Labor Management Relations Act ("LMRA"), the federal duty of fair representation ("DFR"), and Garmon preemption. Therefore, Plaintiffs' claims must be dismissed for the following reasons: *First*, Plaintiffs' claims are barred by the applicable statute of limitations. *Second*, the individual elected officers of Local 1475 are immune from money damages. *Finally*, even if Plaintiffs' claims could survive dismissal on preemption and timeliness grounds, the Complaint falls short of stating a plausible claim for relief.[1]

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).

## I.    <u>INTRODUCTION</u>

Plaintiffs are Deck and Dock ("DND") workers who are employed by the various stevedoring companies in the Port of Savannah ("Port") that are members of Defendant Georgia Stevedores Association ("GSA").[2] In 2012, the DND workers employed by one of those stevedoring companies sought to be represented by the South Atlantic & Gulf Coast District ("SAGCD"), an affiliate of the International Longshoremen's Association ("ILA") through a petition for representation filed with the National Labor Relations Board ("NLRB").

At that time, the DND workers had been historically excluded from representation in a long-standing collective bargaining unit comprised of workers performing clerking and checking work ("CNC") for the GSA employers. After the workers covered by the NLRB petition won the election, and therefore the right to be represented by the SAGCD, on August 8, 2013, Local 1475 and GSA entered into a Memorandum of Understanding ("2013 MOU") that provided for the integration of all the DND employees of the various Port stevedoring companies into the pre-existing ILA bargaining unit, albeit in a separate seniority classification than the workers in the long-standing CNC positions. Thereafter, in response to various complaints received from DND workers about their inability to obtain CNC Seniority, on October 1, 2021, the SAGCD and GSA entered into a Memorandum of Understanding ("2021 MOU") which provided the DND workers (including the three named Plaintiffs) the right to obtain CNC seniority status.

At bottom, Plaintiffs lawsuit challenges the terms of agreements reached between Local 1475 and GSA in 2013 and 2019, as well as the related agreement reached between SAGCD and GSA in 2021, asserting that the agreements should have somehow provided the DND workers with something better than was negotiated. The problem for Plaintiffs is that such a dispute is plainly

---

[2] <u>Doc. 1-1</u>, Complaint, P. 5, ¶20.

controlled by federal labor law, as it implicates the federal duty of fair representation governing the conduct of negotiations by labor organizations, requires the interpretation and application of collective bargaining agreements, and is otherwise within the NLRB's exclusive jurisdiction.

As such, the underlying claims are wildly untimely, as the Plaintiffs have indisputably been on notice of the complained about MOUs at the heart of the Complaint for far more than the applicable six-month statute of limitations. In a transparent attempt to circumvent federal law, Plaintiffs initiated this action in state court, and asserted a series of state causes of action, all of which collectively attack the underlying MOUs at issue. Plaintiffs assert seven claims against Defendants, including *conspiracy related claims* [Georgia RICO (Count I); Civil Conspiracy (Unfair Practices) (Count II); and Civil Conspiracy (The Shipping Companies) (Count V)]; *breach of fiduciary duty claims* [Breach of Fiduciary Duty – Creation of Unfair Practices (Count III); and Breach of Fiduciary Duty – Failure to Address Complaints (Count IV)]; and claims for *punitive damages* (Count VI) and *attorneys' fees* (Count VII).

Thus, while couched as state-law causes of action, all of Plaintiffs' claims arise from and/or relate to the alleged lack of representation of the DND workers in the negotiation and administration of the various agreements governing the DND workers and the alleged refusal to merge the seniority agreements of the DND workers and CNC workers.

The remaining allegations deal with the administration of the collectively bargained for agreements in regard to alleged disparate discipline, denial of access to CNC jobs, and representations made during the course of National Labor Relations Board ("NLRB") proceedings where DND workers challenged the agreements or their proper administration in 2019 and 2022.[3]

---

[3] <u>Doc. 1-1</u>, Complaint, P. 22 ¶75.

Those myriad challenges by DND workers over the years include not only the NLRB charges referenced in the Complaint in 2019 and 2022, but also an unsuccessful lawsuit brought in 2018 in this Court in <u>Oltmanns v. Int'l Longshoremen's Ass'n</u>, by a DND worker who claimed he had been improperly denied CNC seniority.[4]

Although Plaintiffs have asserted state law claims, their claims are governed and preempted by §301 of the LMRA since they arise out of the various agreements and their resolution is substantially dependent upon the analysis of the terms of said agreements. Likewise, Plaintiffs specifically reference alleged fiduciary duties owed by Local 1475 and individual union officers, which directly implicate the DFR under federal labor law. As such, this case is governed by the six-month statute of limitation of §10(b) of the National Labor Relations Act ("NLRA").[5]

## II.    APPLICABLE LEGAL STANDARDS

### a.    Rule 12(b)(6) Standard

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the Complaint must sufficiently "state a claim upon which relief can be granted."[6] Defendants must have "fair notice of what the claim is and the ground upon which it rests."[7] More to the point, claims must be supported by factual allegations that, along with reasonable inferences drawn from those factual allegations, *plausibly* give rise to a claim for relief.[8] In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true well-pleaded factual allegations, and view them in the light most favorable to the non-moving party.[9] Unsupported or conclusory allegations, or "naked assertions devoid of further factual enhancement" will doom a complaint.[10]

---

[4] <u>Oltmanns v. Int'l Longshoremen's Ass'n</u>, 837 Fed. Appx. 689, 695 (11th Cir. 2020).
[5] 29 U.S.C. §160(b); <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 155 (1983).
[6] Fed. R. Civ. P. 12(b)(6).
[7] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).
[8] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).
[9] <u>Lotierzo v. A Woman's World Med. Ctr</u>., 278 F.3d 1180, 1182 (11th Cir. 2002).
[10] <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007) (internal quotations omitted)).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[11] "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'"[12] At minimum, the complaint must contain more than "an unadorned, the defendant unlawfully harmed me accusation,"[13], and must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'"[14] Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."[15]

b. **Rule 12(d) Standard**

A well-recognized exception to the rule against considering evidence outside of the pleadings at the motion to dismiss stage is that courts may "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."[16]

Thus, when deciding this Motion, in addition to considering Plaintiffs' Complaint and all of the Exhibits attached thereto, the Court may also consider the NLRB documents involved in the decision and direction of election referenced in Plaintiffs' Complaint at P. 6, ¶¶22-23; the ILA Local 1475 Savannah Clerks and Checkers Seniority Plan (CNC Seniority Plan);[17] the 2012-2018 Master Contract (Plaintiffs' Complaint, P. 8, ¶27) and the GSA-Local 1475 Collective Bargaining

---

[11] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[12] Burch v. Remington Arms Co., No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955).
[13] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
[14] Traylor v. P'ship Title Co., 491 F. App'x 988, 990 (11th Cir. 2012).
[15] Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F .2d 1171, 117 4 (11th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 326--27 (1989) (Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").
[16] McClure v. Oasis Outsourcing II, Inc., 674 F. App'x 873, 875 (11th Cir. 2016) (quoting SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010)).
[17] Doc. 1-1, Complaint, P 8, ¶26.a); P.14, ¶45; P. 15, ¶47; and P. 23, ¶75.a): Plaintiffs reference separate seniority systems for the CNC and DND workers throughout their Complaint.

Agreement ("Local Agreement") both of which (Master Contract and Local Agreement) are incorporated by referenced by the 2013 MOU already attached to Plaintiffs' Complaint; and the October 1, 2021 Memorandum of Understanding (2021 MOU) referenced in Plaintiffs' Complaint at P. 13, ¶45 as creating a 15,000-hour requirement for DND workers to transition to CNC work.

All of the documents are central to the resolution of Plaintiffs' claims and may be considered by the Court in reviewing this Motion.[18] True and correct copies of the aforementioned documents are attached to Ex. "1", Declaration of Ricky DeLoach as exhibits as follows: Ex. A, Local Agreement; Ex. B, CNC Seniority Plan; Ex. C, 2021 MOU; Ex. D, 2012-2018 Master Contract; Ex. E, the Electronic Docket and Ex. F, the Decision and Direction of Election ("DDE"), NLRB Case No. 10-RC-80061, June 20, 2012; and Ex. G, NLRB Order denying the Request for Review. Local 1475 requests that the Court take judicial notice of the documents which are relied upon in the Complaint and their contents are not in dispute.[19]

## III.    FACTUAL BACKGROUND

### a.    2011-2012: DND Workers Participate in NLRB Hearing on Petition

In 2011, Plaintiffs were DND workers whose job was at that time to "physically load and unload cargo coming on and off ships" on the Port.[20] At that time, the DND work was performed by Plaintiffs, who were directly employed by the Port's stevedoring employers, and were not

---

[18] Bradley v. Devos, 2020 U.S. Dist. LEXIS 167709 (S.D. Ga., June 4, 2020); and Coney v. Lampp, 2018 U.S. Dist. LEXIS 172719 (S.D. Ga., Oct. 5, 2018).

[19] Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (explaining "there is support in case law 'for considering evidence outside the pleadings in connection with a motion to dismiss if the evidence is specifically relied upon in the complaint and its contents are not in dispute.'" In Dodd v. Int'l Longshoremen's Ass'n Loc. 1475 Clerks & Checkers Union, Inc., 2025 U.S. App. LEXIS 20488, *14 (11th Cir. 2025),the 11th Circuit held that it was proper for this Court to take judicial notice of "the fact of" an "NLRB charge and appeals", but not the reasoning of NLRB representatives in deciding not to issue a complaint in that case. Here, the NLRB filings are offered for the permissible purpose of establishing the facts of the chronology of events leading to the DND workers entry into the ILA bargaining unit, as well as the factual testimony of witnesses at the hearing, none of which can be disputed by the Plaintiffs.

[20] Doc. 1-1, Complaint, P. 5 ¶20.

within the CNC bargaining unit covered by the existing Local Agreement.[21] On May 12, 2012, the

SAGCD filed a representation petition with the NLRB,[22] seeking an election in a collective

bargaining unit of "all deck men and dock men" employed by Marine Terminals Corp. d/b/a Ports

America (herein "MTC").[23] In response, MTC took the position that the petition should be

dismissed because DND workers were supervisors excluded from coverage under the NLRA.[24]

An NLRB Hearing Officer held a hearing on the question of the supervisory status of the

DND workers. The hearing record reflected that the relevant DND workers were "paid at an hourly

rate of $16 to $26 and receive[d] overtime if they work more than forty hours per week," and that

they were not entitled to paid vacations, paid holidays or health benefits."[25]

Ultimately, based on the entirety of the record, the Regional Director of NLRB Region 10

concluded that the "hourly part-time stevedores are not statutory supervisors," and directed an

election in that unit.[26] MTC filed a Request for Review with the NLRB, which was denied by the

Board on July 16, 2012.[27] The SAGCD won the election by a vote of 38-0,[28] and therefore was

certified as the collective bargaining agent of MTC's hourly part-time supervisors.

   b. **2013 Memorandum of Understanding ("2013 MOU")**

After the SAGCD won the right to represent the MTC workers in the 2012 NLRB election,

Local 1475 and GSA entered into a Memorandum of Understanding on August 8, 2013, ("2013

---

[21] Doc. 1-1, Complaint, P. 6, ¶¶22-23.
[22] The Complaint asserts that the DND workers filed a "grievance" with the NLRB. Doc. 1-1, Complaint, P. 6, ¶22. The NLRB does not process "grievances"; rather it processes representation petitions filed by unrepresented workers who wish to be represented by a labor organization. 29 U.S.C. §159.
[23] Ex "1", Dec. of Ricky DeLoach, Ex. E, the Electronic Docket and Ex. F, the Decision and Direction of Election ("DDE"), NLRB Case No. 10-RC-80061, June 20, 2012.
[24] Ex. "1", Dec. of Ricky DeLoach, Ex. F, DDE, at P. 2.
[25] Id., at P. 13.
[26] Id., at P. 27-28.
[27] Ex. "1", Dec. of Ricky DeLoach, Ex. G, NLRB Order denying the Request for Review in Case No. 10-RC-80061.
[28] Ex. "1", Dec. of Ricky DeLoach, Ex. F, DDE, P. 27-28.

MOU").[29] The introductory paragraph of the 2013 MOU states that: "On July 18, 2013, the Jurisdiction Committee determined that certain work being performed by management…should be performed by ILA members."[30] Additionally, the 2013 MOU stated that the agreement was "being executed in order to settle long-standing issues among management, the ILA and personnel who have historically performed deck and dock work."[31]

Significantly, pursuant to the 2013 MOU, GSA recognized Local 1475 as the exclusive bargaining representative for the DND workers for *all of the Port employers*, not just those employed by MTC.[32] By its terms, the 2013 MOU did not alter the terms or conditions of the Local Agreement between the bargaining parties (GSA and Local 1475) regarding the CNC workers.[33]

However, the Local Agreement between the bargaining parties governing the CNC workers (*including all of the bargained for protections of the Local Agreement as well as a grievance and arbitration procedure to resolve disputes arising under the Agreement*)[34] was incorporated into the 2013 MOU by reference (except as altered in the 2013 MOU).[35] Additionally, the 2012-2018 Master Contract was incorporated into the 2013 MOU and applied to the DND workers' wages and benefits.[36] The 2013 MOU provides for seniority lists for the protection of DND workers (List A and List B).[37] The 2013 MOU also allowed DND workers to elect whether or not they wanted to stay as direct employees of their current employers and not be represented by Local 1475, or whether they instead wanted to be dispatched through Local 1475's hiring hall.[38]

---

[29] Doc. 1-1, Complaint, Ex. A, 2013 MOU.
[30] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 1.
[31] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 1.
[32] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 1, ¶1.
[33] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 5, ¶15.
[34] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 3, ¶8.
[35] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 1, ¶2.
[36] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 2, ¶5.
[37] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 2, ¶6.
[38] Doc. 1-1, Complaint, Ex. A, 2013 MOU, P. 3, ¶7.

Significantly, by virtue of the 2013 MOU's incorporation of the Local Agreement and Master Contract, DND workers became eligible to receive, among other benefits, the following:

- Annual increases bringing the DND workers' hourly rate of pay to the top contractual rate of $35.00 per hour by the end of the term of the 2012-2018 Master Contract;[39]

- Annual Container Royalty supplemental-wage benefit payments;[40]

- Fully paid medical benefits;[41]

- Vacation and Holiday payments;[42] and

- Payment of overtime wages for all hours worked on Monday through Friday before 8:00 a.m. and after 5:00 p.m.[43]

c. **2019 DND Seniority Plan ("2019 MOU")[44]**

    i.   <u>CNC and DND Workers have Separate Seniority Systems and Plans</u>

Some six (6) years later, at the end of the 2012-2018 Master Contract, the bargaining parties negotiated a seniority agreement for the DND workers (2019 MOU)[45] and the membership democratically voted to ratify it.[46] The 2019 MOU referenced the Local Agreement and the 2013 MOU.[47] The 2019 MOU subjected disputes that arose thereunder to a joint labor and management Seniority Board[48] and subjected all disputes to the grievance procedure set forth in the Local Agreement.[49] The 2019 MOU created detailed and comprehensive seniority classifications (Class A through Class Z17) that recognized the years of stevedoring service DND workers worked while

---

[39] <u>Ex "1"</u>, Dec. of Ricky DeLoach, <u>Ex. D</u>, 2012-2018 Master Contract, P. 3-5.
[40] <u>Ex "1"</u>, Dec. of Ricky DeLoach, <u>Ex. D</u>, 2012-2018 Master Contract, P. 28-30.
[41] <u>Ex "1"</u>, Dec. of Ricky DeLoach, <u>Ex. D</u>, 2012-2018 Master Contract, P. 36.
[42] <u>Ex "1"</u>, Dec. of Ricky DeLoach, <u>Ex. A</u>, Local Agreement, at Section 3(B)(2)(A).
[43] <u>Ex "1"</u>, Dec. of Ricky DeLoach, <u>Ex. A</u>, Local Agreement, at Section A-3.
[44] <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU.
[45] <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU, P. 3, ¶5.
[46] <u>Doc. 1-1</u>, Complaint, P. 8 ¶29.
[47] <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU, P. 1.
[48] <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU, P. 1, ¶1.
[49] <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU, P. 1, ¶2.D.

employed directly by the Port employers prior to being represented by Local 1475.[50] It also recognized that DND workers are part of a separate seniority classification.[51] Under the 2019 MOU, DND workers with seniority can obtain DND jobs to the exclusion of all CNC workers,[52] and under the CNC Seniority Agreement the same is true for CNC workers with seniority.[53]

### d. **2021 MOU**[54]

Plaintiffs assert that some DND workers appealed the 2013 MOU to the SAGCD leadership and the leadership of the ILA.[55] Plaintiffs do not allege when that appeal was made.[56] Plaintiffs further allege Defendant Parsons, in his position of Vice President-Deck and Dock of Local 1475, received numerous complaints from DND workers and sent letters to Defendant Harold Daggett, the ILA President.[57] In those letters, Defendant Parsons references previous unsuccessful attempts on the part of Defendant Robb and Defendant Holland to negotiate an acceptable proposal, *which was democratically and overwhelmingly voted down by the membership*.[58] Plaintiffs allege Defendant Harold Daggett formed the "Holland Committee" in response to the DND workers' requests.[59] However, despite all of these efforts, Plaintiffs allege a breach of the duty for failing to "meaningfully respond to the May 5-6, 2021, letters sent by Michael Parsons to President Harold Daggett requesting intervention and temporary trusteeship";[60] "[i]gnoring appeals to the ILA South Atlantic and Gulf Coast District regarding the unfair treatment of Deck and Dock workers";[61]

---

[50] Doc. 1-1, Complaint, Ex. B, 2019 MOU, P. 2-5.
[51] Doc. 1-1, Complaint, P. 13 ¶45.
[52] Doc. 1-1, Complaint, Ex. B, 2019 MOU, P. 2-5.
[53] Ex "1", Dec. of Ricky DeLoach, Ex. B, CNC Seniority Plan.
[54] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU.
[55] Doc. 1-1, Complaint, P. 10 ¶35.
[56] Doc. 1-1, Complaint, et seq.
[57] Doc. 1-1, Complaint, P. 4 ¶12.
[58] Doc. 1-1, Complaint, Ex. E, May 5, 2021 and May 6, 2021 Letters which were erroneously referenced within the Complaint as being a copy of the Executive Council's report attached as Exhibit E.

"[d]ismissing or minimizing the significant findings in the Executive Council's report of June 4, 2021, which acknowledged that there was sufficient basis to impose an emergency trusteeship;"[62] and "[f]ailing to properly address grievances filed with the local seniority board regarding discriminatory practices."[63] Plaintiffs do not allege specific facts regarding when the alleged grievances were filed; who filed them; or what the result was.[64]

Thereafter, changes were eventually negotiated by the SAGCD with the GSA in response to the DND workers complaints, which were memorialized in the 2021 MOU and signed by Defendant GSA and Defendant Robb in his capacity as President of the SAGCD.[65] The stated purpose of the 2021 MOU in gradually allowing DND workers to transition over to CNC work is "to ensure that Local 1475 provides our employers with qualified, productive workers on all Deck and Dock jobs without interruption."[66] The 2021 MOU contemplates the integration of the DND Seniority List into the CNC Seniority List[67] beginning in Contract Year 2022, but with the caveat that the DND positions are dispatched first using the existing DND Seniority List[68] first[69] and requiring that certain groups of workers have an asterisk placed on their name requiring them to accept DND jobs next in the hiring rotation. After a worker has an asterisk, they are subjected to the 2021 MOU requirement that they work a certain number of DND hours before they can solely

---

[65] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU.

[66] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 6: "This is designed to ensure that Local 1475 provides our employers with qualified, productive workers on all Deck and Dock jobs without interruption."

[67] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 5: "All Deck and Dock personnel being dispatched by the Deck and Dock dispatcher will be placed on the Clerks Seniority List…"

[68] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 6: "All Deck and Dock clerks moved to the Clerks Seniority List will have an asterisk placed next to their name indicating that they will continue to be dispatched…in the same manner that currently exists and per the Deck and Dock Seniority List…"

[69] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 17.

work CNC jobs.[70] The 2021 MOU's stated purpose is "to establish a unified seniority system…" and with a stated goal to resolve the issue in everyone's best interest.[71]

The 2021 MOU provides a mechanism for merger of the DND and CNC seniority lists over a period of time – if two (2) conditions precedent are met: (1) the DND worker performs the stated number of hours;[72] and (2) the DND worker chooses to have the asterisk removed and to perform CNC work – recognizing that some workers may choose to stay on the DND Seniority List with top level seniority for DND jobs without having to compete for CNC work with lower seniority from the CNC Seniority List. Although the DND workers are provided a path onto the CNC Seniority List, the same is not true of CNC workers to work with the same placeholder seniority from the DND Seniority List. The Complaint is silent as to whether Plaintiffs availed themselves of their right to obtain CNC Seniority under the terms of the 2021 MOU.

## IV.    ARGUMENT

### a.    All Plaintiffs' Claims, However Plead, Are Preempted by Federal Labor Law

All of Plaintiffs' state law claims in their Complaint against the Local Union Defendants are preempted by federal labor law under several distinct theories: (1) preemption under §301 of the LMRA; (2) DFR preemption; and (3) Garmon preemption.

#### i.    Plaintiffs' Claims Are Preempted Under the LMRA (§301 Preemption)

Plaintiffs allege that Local 1475 created and implemented "the discriminatory 2013 MOU that established a separate and unequal seniority system…";[73] that Local 1475 implemented

---

[70] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 6: "This is designed to ensure that Local 1475 provides our employers with qualified, productive workers on all Deck and Dock jobs without interruption."
[71] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Page 1, *introductory paragraphs*.
[72] Ex "1", Dec. of Ricky DeLoach, Ex. C, 2021 MOU, Section 7: "15,000 hours from contract year 2013-2014 forward or 10,000 hours from the contract year beginning in October 2021-2022 forward, whichever occurs first."
[73] Doc. 1-1, Complaint, P. 22 ¶75(a).

"disproportionate disciplinary actions against Deck and Dock workers…";[74] and that the agreements governing the DND workers generally disadvantaged DND workers.[75]

Section 301 of the LMRA governs "[s]uits for violation of contracts between an employer and a labor organization[.]"[76] The Supreme Court has held that §301 preempts a plaintiff's claim "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," including state law claims that are "inextricably intertwined with consideration of the terms of the labor contract."[77]

The Supreme Court has interpreted this statute to "mandate[] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes."[78]

Here, it makes no difference that the claims appear to be pleaded as state-law conspiracy or breach of fiduciary duty claims because Plaintiffs are "precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action."[79] Thus, one "may not merely rebrand a claim in order to avoid preemption."[80] What matters is the true gravamen of Plaintiffs' action.[81]

Here, the resolution of Plaintiffs' claims are inextricably intertwined and substantially dependent upon an analysis of the Local Agreement; the 2013 MOU; the 2019 MOU; and the 2021

---

[74] Doc. 1-1, Complaint, P. 22 ¶75(d).
[75] Doc. 1-1, Complaint, P. 27-29 ¶¶90-96.
[76] 29 U.S.C. § 185(a).
[77] 29 U.S.C. § 185(a) (codifying section 301(a)); Allis-Chalmers v. Lueck, 471 U.S. 202, 220 (1985); Atwater v. Nat'l Football League Players Ass'n, 626 F.3d 1170, 1176 (11th Cir. 2010).
[78] Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 & 404 n.3 (1988); see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210–11 (1985) (allowing CBA terms to be given "different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements" (quoting Teamsters v. Lucas Flour Co., 369 U.S. 95, 103–104 (1962))).
[79] Int'l Brotherhood of Elec. Workers v. Hechler, 481 U.S. 851, 862 (1987).
[80] Kurns v. A.W. Chesterton Inc., 620 F.3d 392, 398 n.8 (3d Cir. 2010).
[81] Barton v. House of Raeford Farms, Inc., 745 F.3d 95, 107 (4th Cir. 2014) (a plaintiff "may not 'evade the requirements of § 301' through artful pleading" (quoting Allis-Chalmers, 471 U.S. at 2011)); Hyles v. Mensing, 849 F.2d 1213, 1215 (9th Cir. 1988) ("To determine whether section 301 preempts a state tort claim, we do not look to how the complaint is cast.")

MOU, which are all indisputably Section 301 contracts. These agreements cover a broad range of subjects affecting the terms and conditions of employment for DND workers, including seniority, wage and benefit provisions, work rules, discipline, and contain comprehensive independent grievance procedures for the resolution of disputes.[82]

The gravamen of Plaintiffs' Complaint is that the Local Union Defendants should have bargained for a different agreement in 2013, 2019, and 2021 as it concerned the DND workers. Plaintiffs' claims are precisely the type of labor dispute that courts have long held are preempted because resolution of the claims depends upon an interpretation of these agreements.

    ii.    <u>Plaintiffs' Claims Are Preempted Under the NLRA (DFR Preemption)</u>

The duty of fair representation ("DFR") arises from a union's "exclusive power to represent all employees in a particular bargaining unit."[83] A breach of the duty occurs where the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."[84] Where plaintiffs plead state causes of action that are in reality allegations of a breach of the duty of fair representation, the duty of fair representation preempts the state law.[85]

    1.    <u>Plaintiffs' Breach of Fiduciary Claims (Counts III-IV) are Preempted</u>

Here, Plaintiffs allege breach of fiduciary duty claims under state law which are clearly DFR claims (Counts III-IV). Specifically, in Count III, Plaintiffs allege "Defendants ILA Local

---

[82] Ex "1", Dec. of Ricky DeLoach, <u>Ex. A</u>, Local Agreement; <u>Ex. B</u>, CNC Seniority Plan; and <u>Ex. C</u>, 2021 MOU ; <u>Doc. 1-1</u>, Complaint, Ex. A, 2013 MOU; <u>Doc. 1-1</u>, Complaint, Ex. B, 2019 MOU.
[83] <u>Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6</u>, 493 U.S. 67, 86-87 (1989).
[84] <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967).
[85] <u>Gachett v. Retail Wholesale Dep't Store Union</u>, No. 11-cv-398-MEF, 2013 WL 1336743, at *6 (M.D. Ala. Mar. 29, 2013); <u>Pitts v. Plumbers Steamfitters Local Union No. 33</u>, 718 F. Supp. 2d 1010, 1017-19 (S.D. Iowa 2010); <u>Chamernick v. United Steelworkers of Am., Local 2660</u>, No. 08-6475 (JNE/RLE), 2009 WL 1209467, at *4 (D. Minn. May 1, 2009); <u>Taylor v. Giant Food Inc.</u>, 438 F. Supp. 2d 576, 583 (D. Md. 2006); <u>Carr v. Local Union 1593</u>, 326 F. Supp. 2d 999, 1003 (D.N.D. 2004); Cahoon v. Int'l Bhd. of Elec. Workers Local 261, 175 F. Supp. 2d 220, 223 (D. Conn. 2001); <u>Madison v. Motion Pictures Set Painters & Sign Writers Local 729</u>, 132 F. Supp. 2d 1244, 1258-59 (C.D. Cal. 2000); <u>Oliva v. Wine, Liquor & Distillery Workers Union, Local One</u>, 651 F. Supp. 369, 371 (S.D.N.Y. 1987); <u>Billy Jack For Her, Inc. v. N.Y. Coat, Suit, Dress, Rainwear & Allied Workers' Union, ILGWU, AFL-CIO</u>, 511 F. Supp. 1180, 1193 (S.D.N.Y. 1981).

1475, Georgia Stevedore Association, and the individual union leaders named herein owed a fiduciary duty to the Plaintiffs and other Deck and Dock workers as union members. This fiduciary duty is established under the principles of union representation and Georgia case law regarding fiduciary relationships."[86] In Count IV, Plaintiffs allege that Local 1475 and Defendant Parsons (as well as Defendants Dennis Daggett, Alan Robb, and Harold Daggett) owed a fiduciary duty to Plaintiffs to fairly and effectively address complaints regarding inequitable treatment of Deck and Dock workers.[87] Plaintiffs allege that each time that DND workers complain "about inequities in their treatment, and these complaints were not acted upon to remedy the situation, a separate breach of fiduciary duty occurred…" and that "[t]hese breaches have been continuous from 2013 to the present day."[88] Plaintiffs do not reference specific dates of complaints that were not acted upon, [89] let alone any action that the Union Defendants took after October 1, 2021.  Plaintiffs allege that failing to address these unnamed and undated complaints disadvantaged DND workers and were a "fundamental betrayal of the union's duty to represent all its members fairly."[90] Courts have regularly held the DFR preempts such state-law breach of fiduciary duty claims.[91]

### 2. Plaintiffs' Conspiracy Claims (Counts I-II, and V) are Preempted

Plaintiffs allege a conspiracy between the Local Union Defendants and Defendant GSA that "leveraged the union's supposed duty of fair representation"[92] to undermine the DND workers. Plaintiffs portray the DFR and the breach of that duty as the "betrayal of fiduciary duty" and that this betrayal (breach) of the fiduciary duty (duty of fair representation) "formed the backbone of

---

[86] Doc. 1-1, Complaint, P. 23 ¶78.
[87] Doc. 1-1, Complaint, P. 25 ¶84.
[88] Doc. 1-1, Complaint, P. 26 ¶86.
[89] Doc. 1-1, Complaint, et seq.
[90] Doc. 1-1, Complaint, P. 26 ¶87.
[91] Walsh v. Int'l Bhd. of Elec. Workers, 62 F.Supp.3d 300, 303 (S.D.N.Y. 2014) ("plaintiffs' claims are preempted because they are subsumed by the duty of fair representation"); Smith v. Local Union No. 110, Int'l Bhd. of Elec. Workers, 681 F.Supp.2d 995, 1001 (D. Minn. 2010): (DFR preempts "breach of trust" claim against union).
[92] Doc. 1-1, Complaint, P. 13-14 ¶46.

the scheme that has persisted from 2013 to the present day."[93] Clearly, the conspiracy related claims arise out of Local 1475's status as the exclusive representative of the bargaining unit. In those situations, courts find the claims preempted by federal law construe them as DFR claims.[94]

Here, each of the conspiracy claims are based upon Local 1475's status as the exclusive representative of the bargaining unit and its relationship to Plaintiffs. For example, Plaintiffs allege the bargaining parties (Local 1475 and GSA) "worked together to protect union benefits for existing Clerks and Checkers…"[95] Plaintiffs further allege that Local 1475 and GSA did not give "equal protection to Deck and Dock workers with valid membership…"[96] and that the bargaining parties attempted to "drive the Deck and Dock workers from the Local."[97] Plaintiffs further allege that the purpose of the alleged state law conspiracy was "discriminating against Deck and Dock workers and depriving them of fair representation, equal benefits, and equal employment opportunities within the union."[98] The DFR doctrine "applies to all union activity,"[99] including contract administration and enforcement.[100] Here, Plaintiffs conspiracy claims are aimed at Local 1475's negotiation of and administration of the agreements governing the DND work and each of these claims should be construed as DFR claims and any related state claims should be preempted.

---

[93] Doc. 1-1, Complaint, P. 13-14 ¶46.

[94] Johnson v. UFCW, Local No. 23, 828 F.2d 961, 963, 967 (3d Cir. 1987) (finding that negligence and fraud claims are preempted by the DFR and construing the claims as a DFR claim); Calvo v. Alers, No. 16-02783, 2017 U.S. Dist. LEXIS 11217, at **6-7 (D.N.J. Jan. 26, 2017) (construing breach of contract and tort claims as DFR claim); Smiley v. Chrysler, 589 F. Supp. 2d 471, 488-89 (D. Del. 2008) (construing breach of contract and personal-injury type claims as DFR claim); Crusco v. Local 804 IATSE, No. 11-6893, 2012 U.S. Dist. LEXIS 140315, at **11-12 (D.N.J. Sept. 28, 2012) (construing state breach of contract and personal-injury type claims as DFR claim); Hollie v. Smith, 813 F. Supp. 2d 214, 217-18 (D.D.C. 2011) (construing state breach of contract claim as DFR claim); Taylor v. Giant Food, Inc., 438 F. Supp. 2d 576, 583-85 (D. Md. 2006) (construing state law claims arising out of union's representation as DFR claim); Giddings-Slaven v. MVM, Inc., No. 06-0165, 2009 U.S. Dist. LEXIS 95822, at *7 (D.V.I. Oct. 14, 2009) (negligent infliction of emotional distress claim construed as DFR claim); Garland v. US Airways, Inc., No. 05-140, 2006 U.S. Dist. LEXIS 89714, at **15-17 (W.D. Pa. Dec. 12, 2006) (state law claims, including negligent infliction of emotional distress claim, construed as DFR claim).

[95] Doc. 1-1, Complaint, P. 15 ¶53.

[96] Doc. 1-1, Complaint, P. 15 ¶53.

[97] Doc. 1-1, Complaint, P. 15 ¶53.

[98] Doc. 1-1, Complaint, P. 21-22 ¶73.

[99] Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991).

[100] 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 271 (2009).

iii.    Plaintiffs' Claims Are Preempted Under Garmon Preemption

The Supreme Court held in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), that conduct "arguably subject to §7 or §8 of the National Labor Relations Act [the 'NLRA']"—in other words, conduct that is either arguably protected by or arguably prohibited by the NLRA—will generally be subject to preemption.[101]

Section 8 of the NLRA makes it illegal for a union "to restrain or coerce . . . employees in the exercise of the rights guaranteed in section 7."[102] Application of the Garmon doctrine to Plaintiffs' various state law claims asserting that the Local Union Defendants improperly or illegally failed to negotiate contract terms that were acceptable to the DND workers is a straightforward exercise. To the extent not otherwise preempted by §301 or DFR preemption, the underlying conduct complained of in the Complaint is, at bottom, a garden variety unfair labor practice charge about a labor organization's negotiation of the terms of a collective bargaining agreement and is plainly within the NLRB's exclusive jurisdiction. See e.g. Local 471, Rochester Regional Joint Board (Sodexo, Inc.), 359 NLRB 1538, 1539-1542 (2013) (finding that union illegally negotiated contract provision to penalize worker for dissident activities, but that union did not breach DFR by "choosing seniority-based bidding, even though more junior [employee] might have been disadvantaged as a result"); Fireman & Oilers Local 320 (Philip Morris, U.S.A.) 323 NLRB 89, 91 (1997) (union does not violate DFR "because it acts pursuant to a request from a group of represented employees thereafter negotiates contract provisions beneficial to that group"). Alternatively, to the extent that the state law claims seek to impose liability on the Local Union Defendants because of their activities "for the purpose of collective bargaining and other

---

[101] San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959). Kaufman v. Allied Pilots Ass'n, 274 F.3d 197, 200-01 (5th Cir. 2001) (emphasizing the "broad scope" of Garmon preemption).
[102] 29 U.S.C. § 158(b)(1)(A).

mutual aid or protection," 29 U.S.C. § 157, such conduct is clearly protected by the NLRA. In sum, the conduct about which Plaintiffs complain is clearly covered by the NLRA, and therefore it is preempted under Garmon.[103]

    b.   All of Plaintiffs' Claims are Barred by the Applicable Statute of Limitations

The statute of limitations for claims arising under §301 of the LMRA and DFR claims is six months.[104] Having established above that the gravamen of Plaintiffs' Complaint alleges claims arising under §301 of the LMRA and the DFR and that the claims are preempted, the allegations date back 14 years with the most recent allegation from 2021 – 4 years ago. There is not one factual allegation in the Complaint which is alleged to have occurred during the six (6) month lookback time frame.[105] Therefore, Plaintiffs' claims should be dismissed as time barred.

    c.   The Individual Elected Officers of Local 1475 Should be Dismissed.

Plaintiffs bring claims against individual union officials in Count II (Civil Conspiracy – Unfair Practices) (Ricky DeLoach; Frank Ryan Jr., and Steve Sims); Count III (Breach of Fiduciary Duty – Creation of Unfair Practices) ("the individual union leaders"); Count IV (Breach of Fiduciary Duty – Failure to Address Complaints) (Michael Parsons); Count V (Civil Conspiracy – The Shipping Companies) (Ricky DeLoach; Frank Ryan Jr.; and Steve Sims); Count VI (Punitive Damages) ("the Defendants"); and Count VII (Attorney Fees) ("Defendants").

The individual union officials must be dismissed because they cannot be held liable for a §301 or a DFR violation as a matter of law.[106] Under 29 U.S.C. §185(b), "[a]ny money judgment

---

[103] San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959).
[104] DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983).
[105] Doc. 1-1, Complaint, et seq.
[106] Local 472, United Ass'n of Journeymen & Apprentices v. Georgia Power Co., 684 F.2d 721, 725 fn. 3 (11th Cir. 1982) (citing 29 U.S.C. § 185(b) (1976) and Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962)): in a similar case alleging conspiracy by elected union officials the Eleventh Circuit held that the individuals were insulated from liability for money damages: "Section 301(b) precludes assessment of damages against individual union members." See also Shanks v. Potter, 2010 U.S. Dist. LEXIS 66176 (S.D. Ga., May 14, 2010) citing Covello

against a labor organization…shall not be enforceable against any individual member or his assets." The Supreme Court has thus held that the congressional policy of the LMRA is that "only the union [is] to be made to respond for union wrongs; and that the union members [are] not to be subject to levy."[107] Plaintiffs sue the individual union officials in their personal capacities as officers of Local 1475. Any relationship that the individual union officials have with Plaintiffs was solely, and exclusively in relation to their official union positions. Any action or lack thereof taken by the individual union officials were taken in their official union capacities. There are no allegations by Plaintiffs of any personal wrongdoing against them by the individual union officials.

As federal law prohibits union officers from being held personally liable for union actions, the court should dismiss all claims against the individual union officials.[108] Moreover, to the extent that Plaintiffs are asserting claims against individual union officials other than for breach of the DFR, the Supreme Court's holding in Atkinson has been interpreted to preclude the maintenance of state law tor and other claims against union representatives for conduct while acting in their capacity as agents, representative or members of a union.[109]

    d.   The Complaint falls short of stating a plausible claim for relief

        i.   The Complaint Fails to State a Plausible DFR or §301 Claim

In one of the Supreme Court's earliest discussions of the DFR, Ford Motor Co. v. Huffman, the Court addressed a dispute that arose out of a term in a collective-bargaining agreement that

---

v. Depository Trust Co., 88 F. Supp. 2d 59, 62 (E.D.N.Y. 2000) (dismissing individual union officers and employees from suit alleging breach of duty of fair representation).

[107] Atkinson v. Sinclair Refining Co., 370 U.S. 238, 247 (1962).

[108] Local Union Defendants adopt the arguments regarding these same issues found in Doc. 19-1, Memo of Law in Support of Motion to Dismiss filed by Defendants Harold J. Daggett, Dennis A. Daggett, and Benny Holland, Jr.

[109] Universal Communications Corp. v. Burns, 449 F.2d 691, 693-694 (5ᵗʰ Circ. 1971): citing Atkinson as authority, the Fifth Circuit stated: "Among the restrictions found [in §301] is one which limits recovery to the union as an entity and forbids the collection of damages from individual union members. This restriction applies even if the claim purports to be based exclusively on state law." In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11ᵗʰ Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

gave a seniority benefit to some employees with pre-employment military service during World War II, to the detriment of some other employees whose periods of service began after they obtained positions with the company. A lower court found a violation of the DFR, but the Supreme Court disagreed, observing that "differences arise in the manner and degree to which" individual employees or groups are affected by the terms negotiated by their union, but "the mere existence of such differences does not make them invalid."[110] The Court continued:

> The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.[111]

In this regard, this is not a case where Local 1475 took away seniority that workers had earned to advantage a different group of workers.[112] Rather, this is a case where the then unrepresented DND workers were unhappy with the terms and conditions of their employment in 2011, voted for union representation in order to provide themselves with the bargaining power to gain leverage to obtain better terms and conditions. And there can be no dispute that this decision led directly to the DND workers' entry into the ILA workforce, and a concomitant, and substantial, increase in both wages and benefits per the terms of the 2013 MOU.

Likewise, in response to the complaints of the DND worker for a "fix" to their inability to obtain CNC work, the 2021 MOU was negotiated, *specifically*, to provide the DND workers (including the Plaintiffs) with a pathway to obtain CNC seniority status.

In sum, the essence of Plaintiffs' Complaint is that the Union Defendants should have negotiated something better than was negotiated in 2013, as modified in 2021, and that the

---

[110] <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330, 338 (1953)).
[111] <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330, 338 (1953)). See <u>Rakestraw v. United Airlines, Inc.</u>, 981 F.2d 1524, 1535 (7th Cir. 1992) ("seniority is a legitimate subject of discussion and compromise in collective bargaining").
[112] <u>Barton Brands, Ltd. v. NLRB</u>, 529 F.2d 793, 800 (7th Cir. 1976) (unlawful to "abridge" the "established seniority rights of a minority" of company employees "for no apparent reason other than political expediency").

Plaintiffs should have received something more or better than what the Local Union Defendants were able to negotiate.  Because Plaintiffs failed to plausibly allege any facts supporting their claims the Local Union Defendants failed to do so for reasons that were arbitrary, discriminatory, or in bad faith, their preempted state law claims fail, and this case should be dismissed.

> ii.    Plaintiffs' punitive damages (Count VI) and attorneys' fees (Count VII) claims should likewise be dismissed.[113]

### 1.    Punitive Damages are not Available.

Plaintiffs' punitive damages (Count VI) claims should be dismissed.  As discussed above, Plaintiffs' claims against the Local Union Defendants are nothing more than a DFR claim dressed up as a series of state claims.  Because the Court should construe the Complaint as a DFR claim, punitive damages may not be awarded on such a claim.[114]  Likewise, as a general rule, punitive damages are not allowed in breach of contract actions brought under §301.[115]  Accordingly, Plaintiffs' Count VI for punitive damages must be dismissed.

### 2.    Attorney's Fees are not Available.

Plaintiffs' attorneys' fees (Count VII) claim should also be dismissed. Attorney's fees are not authorized by §301 of the LMRA.[116] The Eleventh Circuit has held, however, that attorney's fees can be awarded by a Court "under its equity power if a party violates § 301(a) in bad faith,

---

[113] Local Union Defendants adopt the arguments regarding these same issues found in Doc. 19-1, Memo of Law in Support of Motion to Dismiss filed by Defendants Harold J. Daggett, Dennis A. Daggett, and Benny Holland, Jr.
[114] Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 52 (1979): "Because general labor policy disfavors punishment, and the adverse consequences of punitive damages awards could be substantial, we hold that such damages may not be assessed against a union that breaches its duty of fair representation by failing properly to pursue a grievance." Zepperi-Lomanto v. Am. Postal Workers Union, 751 F.3d 482, 485 (7th Cir. 2014) citing Lewis v. Local Union No. 100 of Laborers' Int'l Union of N. Am., 750 F.2d 1368, 1382 (7th Cir. 1984) (collecting cases from other circuits): we have interpreted Foust to establish "a blanket prohibition against the recovery of punitive damages in all fair representation suits."
[115] Crowne Investments, Inc. v. United Food & Commercial Workers, Local No. 1657, 959 F. Supp. 1473, 1479 (M.D. Ala. 1997) (gathering cases).
[116] 29 U.S.C. § 185; Varnes v. Glass Bottle Blowers Assoc., 674 F.2d 1365, 1369 (11th Cir. 1982).

vexatiously, wantonly or for oppressive reasons."[117] Plaintiffs do not cite any facts in support of their allegations that the Local Union Defendants acted in bad faith. Thus, consistent with Eleventh Circuit precedent, Plaintiffs are not entitled to attorney's fees as a matter of law and Count VII should be dismissed. Finally, to the extent the Court concludes there is a DFR cause of action, while attorney's fees may be an element of damages for such a claim, they do not constitute a separate cause of action and therefore, this Count should be dismissed.

V.    **CONCLUSION**

For the foregoing reasons, based upon the facts and applicable law stated herein, the Local Union Defendants respectfully pray that their Motion be granted and that Plaintiffs' Complaint against them be dismissed with prejudice, with all costs assessed against Plaintiffs and for such other relief as this Honorable Court deems just and proper.

Respectfully submitted this 16th day of September, 2025.

**CHARLES HERMAN LAW**

/s/ Charles Herman
Charles Herman
Georgia Bar No. 142852
*Attorney for ILA Local 1475 Clerks and Checkers*
*Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve*
*Sims, and Michael Parsons*

127 Abercorn Street, Suite 208
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com

---

[117] United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC, 807 F.3d 1258, 1275 (11th Cir. 2015) (citations omitted).

<u>UNITED STATES DISTRICT COURT</u>
<u>SOUTHERN DISTRICT OF GEORGIA</u>
<u>SAVANNAH DIVISION</u>

| | |
|---|---|
| STEPHEN COWART, JOSEPH HURST, and ) | |
| KENNETH RAHN, JR., ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | Case No.: 4:25-cv-00199-RSB-CLR |
| v. ) | |
| ) | |
| ILA LOCAL 1475 CLERKS AND ) | |
| CHECKERS UNION, INC., GEORGIA ) | |
| STEVEDORE ASSOCIATION, BENNY ) | |
| HOLLAND, JR., RICKY DELOACH, ) | |
| FRANK RYAN, JR., STEVE SIMS, ) | |
| NORMAN MASSEY, TRACY O'CONNELL, ) | |
| MICHAEL PARSONS, DENNIS DAGGETT, ) | |
| ALAN ROBB, HAROLD DAGGETT, and ) | |
| JOHN DOE(S) 1-10, ) | |
| ) | |
|    Defendants. ) | |
| ) | |

<u>*CERTIFICATE OF SERVICE*</u>

The undersigned certifies that I have on this day served all the parties in this case with this Brief in Support of Local Union Defendants' Motion to Dismiss in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

Respectfully submitted this 16th day of September 2025.

**CHARLES HERMAN LAW**

/s/ Charles Herman
Charles Herman
Georgia Bar No. 142852
***Attorney for ILA Local 1475 Clerks and Checkers Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons***

127 Abercorn Street, Suite 208
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com