IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **STEPHEN COWART, JOSEPH HURST, AND KENNETH RAHN, JR.,** | **Civil Action No.** |
| Plaintiffs, | **4:25-cv-00199-RSB-CLR** |
| v. | |
| **ILA LOCAL 1475 CLERKS AND CHECKERS UNION, INC., et al.** | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT GEORGIA STEVEDORE ASSOCIATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)

### INTRODUCTION

All claims for relief asserted against GSA in Plaintiffs' Complaint (Doc. 1-1) must be dismissed because: (1) Plaintiffs' state-law claims are preempted by §301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"); (2) Plaintiffs' preempted claims are time-barred; (3) Plaintiffs failed to exhaust mandatory grievance proceedings; and (4) Plaintiffs' state-law claims fail to state a viable plausible claim for relief and/or are barred by applicable statutes of limitation under state law. Plaintiffs' attempts to creatively plead their way around preemption, statute of limitations and the mandates of Federal Civil Rule 12(b)(6) fail.

Plaintiffs' Complaint fails to state any viable claim for relief against GSA, as a matter of law, and should be dismissed in its entirety.

### ARGUMENT

#### I.    Relevant facts presented in the Complaint (Doc. 1-1)

Plaintiffs are all rank-and-file members of the International Longshoremen's Association

(ILA) Local 1475 Clerks and Checkers Union, Inc. (the "ILA Local 1475") (Doc. 1-1, pg. 6.) Pursuant to provisions of the Collective Bargaining Agreements (the "CBAs") between ILA Local 1475 and GSA, the August 8, 2013 (the "2013 MOU") and the April 1, 2019 memorandums of understanding (the "2019 MOU"), ILA Local 1475 serves as the collective bargaining representative for GSA-employed workers. (*See* Doc. 1-1, pgs. 8-11, 15, 23, 24, 29, 33, 44 (¶¶ 25-29, 33-35, 48, 75, 80, 93; Exhibits A and B).) The 2013 MOU and the 2019 MOU incorporate the "Clerk and Checker's Agreement of Local 1475" CBAs between ILA Local 1475 and GSA subject to the terms set forth in the MOUs. (Doc. 1-1, pg. 33, Exhibit A; pg. 44, Exhibit B.)

Per the CBAs, seniority is to be "decided and enforced on a local basis;" and here, the local seniority system is governed by the Savannah Deck and Dock Seniority Plan dated April 1, 2019 (the "Seniority Plan"). (Doc. 1-1, pg. 44-52, Exhibit B.) The Seniority Plan provides any dispute shall be referred to the Seniority Board. (Doc. 1-1, pg. 44, ¶ 2.) Any determination by the Seniority Board shall be final and binding, but if the Seniority Board cannot reach a determination, the dispute must be resolved under the procedures established under Clause 15(B) of the CBA. (*Id.*) The Complaint is devoid of any referral of any dispute regarding the Seniority Plan to the Seniority Board and/or any resolution via the dispute procedures in the CBAs by any named Plaintiff.

In 2011, a group of non-union Deck and Dock workers filed a grievance alleging they should be represented by the ILA Local 1475. (Doc. 1-1, pg. 7.) The workers won their grievance, and from 2011 to 2013, worked to integrate into the ILA Local 1475, but claim they were not welcome. (Doc. 1-1, pg. 7.) Despite being dues-paying union members, Plaintiffs allege the ILA Local 1475 has systematically used its organizational structure and procedures to discriminate against Plaintiffs. (Doc. 1-1, pg. 7.) Under the 2013 MOU, the workers were dispatched to jobs from the ILA Local 1475. (Doc. 1-1, pg. 8.) The 2013 MOU allegedly created a two-tiered caste

system. (Doc. 1-1, pg. 8-9.) Plaintiffs alleges the 2013 MOU robbed them of benefits of union membership. (Doc. 1-1, pg. 9.) Then, in 2019, a Seniority Agreement was passed by a comfortable margin. (Doc. 1-1, pg. 10.) Plaintiffs allege the 2019 Seniority Agreement calcified the existing inequities between members. (Doc. 1-1, pg. 11.)  Plaintiffs pay the same dues and fees as other union members, but were excluded from higher-paying jobs, received harsher punishments for the same offenses, and were not offered the same training opportunities. (Doc. 1-1, pg. 12-13.) Plaintiffs pay the same full union dues, contributed valuable work hours, and increased the union's bargaining power, but were denied the same benefits as other members, resulting in financial losses and unreasonable barriers to advancement. (Doc. 1-1, pg. 13-14.)

Plaintiffs allege the union and GSA "leveraged the union's supposed duty of fair representation to actually undermine the interest of specific group of members." (Doc. 1-1, pg. 14.) Plaintiffs allege statements made during proceedings before the National Labor Relations Board ("NLRB") in 2019 by GSA and/or the union and in 2022 by the union furthered their claims. (Doc. 1-1, pg. 15.) Plaintiffs generally allege both ILA Local 1475 and GSA engaged in acts of the use of funds and assets they claim were "embezzled," the seniority system "manipulated," union resources "diverted," and benefits of union membership denied.  (Doc. 1-1, pg. 18-19, ¶58.)

## II.    Federal Rule of Civil Procedure 12(b)(6) standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79.  However, legal conclusions, unwarranted factual deductions and conclusory statements are not entitled to such deference.  *Id.* at 663; *Griffin Indus.,*

*Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). This Court can make reasonable inferences in Plaintiff's favor, "but [it is] not required to draw plaintiff's inference" or unreasonable inferences. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir.2005). Rule 8 of the Federal Rules of Civil Procedure requires more than an "unadorned, the-defendant-unlawfully harmed me accusation," because "[t]he mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Iqbal,* 129 S.Ct. at 1949. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Accepting the allegations as true and construing the facts in the light most favorable to Plaintiffs, the Complaint fails to state any viable or plausible claim for relief and should be dismissed in its entirety.

## III.    Plaintiffs' Complaint, and all Claims therein, Must Be Dismissed

### A.    The Preemption Doctrine.

Section 301(a) of the Labor Management Relations Act ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The LMRA grants jurisdiction to federal courts to adjudicate employment disputes involving CBAs and embodies the policy that federal law provides the substantive law applicable to § 301(a) suits. *Textile Workers Union of Am. v. Lincoln Mills of Ala*., 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *Lightning v. Roadway Express, Inc*., 60 F.3d 1551, 1556 (11th Cir.1995). Accordingly, § 301 preemption doctrine is summarized as follows:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). This preemption doctrine exists to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Id.* at 404, 108 S.Ct. at 1880.

When a federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is, in reality, based on federal law. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). The Supreme Court has identified three statutes that completely preempt state law claims, and § 301 of the LMRA is one of those statutes. *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291 (11th Cir. 2004). It well established that "[section] 301 must be broadly construed to encompass any agreement, written or unwritten, formal or informal, which functions to preserve harmonious relations between labor and management." *Smith v. Kerrville Bus. Co.*, 709 F.2d 914, 919 (5th Cir.1983). A state-law claim is preempted by § 301 of the LMRA if "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," or, stated another way, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220, 105 S.Ct. 1904, 1912, 1916, 85 L.Ed.2d 206 (1985). Whether the LMRA preempts a state-law claim is a question of law and proper to decide through a Rule 12(b)(6) motion. *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1556 (11th Cir.1995).

**B.    Plaintiffs' State Law Claims are Substantially Dependent Upon an Analysis of the CBA; therefore, the Claims are Preempted and Must be Dismissed.**

Where a state-law claim is completely preempted by § 301 of the LMRA, it must either be dismissed (as preempted by federal labor-contract law) or treated as a § 301 federal-question claim. *See Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. 1904; *Baldwin v. Boise Paper Holdings*, L.L.C., 631 F. App'x 831, 834 (11th Cir. 2015). Plaintiffs' state law claims are preempted and should be dismissed. Plaintiffs alleged four state-law claims against GSA: (1) Violations of Georgia Racketeer Influenced and Corrupt Organization Act ("RICO") (Count 1); (2) Civil Conspiracy (Unfair Practices) (Count II); (3) Breach of Fiduciary Duty (Creation of Unfair Practices) (Count III); and (4) Civil Conspiracy (The Shipping Companies) (Count V). This case was removed to this Court on August 25, 2025. (Doc. 1.)  To date, and well beyond fourteen (14) days after removal, Plaintiffs have not filed a RICO statement as required by Local Civil Rule 9.1. Plaintiffs failure to comply with this rule, alone, warrants dismissal of their RICO claim.

The Eleventh Circuit has held that "[i]n deciding whether state law tort claims require interpretation of the terms of a labor contract, courts [should] . . . look to the elements of the state law claims." *Lightning v. Roadway Express,* 60 F.3d 1551, 1557 (11th Cir.1995). Ultimately, each claim presented here stems from allegations of being denied fair representation, misuse of union dues, equal benefits and seniority arising from union membership – all of which are governed by the CBAs. Because Plaintiffs' claims are rooted in the alleged denial of union benefits, there is no doubt they are substantially dependent on an analysis of the CBAs. Plaintiffs cannot avoid preemption by § 301 of the LMRA through creative pleading.

**1.    Plaintiffs' RICO claims are preempted.**

Count I alleges violations of O.C.G.A. §16-14-1, *et seq*., by Defendants ILA Local 1475 and GSA "working together to protect union benefits for existing Clerks and Checkers, and by not

giving equal protection to Deck and Dock workers with valid membership…" (Doc. 1-1, pg. 16, ¶53; see also, pg. 13, ¶ 43-46.)  For this Court to determine whether ILA Local 1475 and GSA's conduct was unfair or resulted in a denial of union benefits as alleged, this Court necessarily must consider the terms of the collective-bargaining agreement that governed Plaintiffs' benefits. *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1338-41 (11th Cir. 2004). Plaintiffs' claim is plead under one of the two separate provisions of Georgia RICO, specifically, citing Ga. Code Ann. §§ 16-14-4(a). (Doc. 1-1, pg. 21, ¶67.) Ga. Code Ann. § 16-14-4(a) ("subsection(a)"), provides,

> It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

To establish a violation under subsection (a), Plaintiffs have to show "proof that the defendant committed predicate offenses ... at least twice." *Cobb Cnty. v. Jones Grp., P.L.C.*, 218 Ga.App. 149, 460 S.E.2d 516, 521 (1995); accord *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009).  And a "pattern of racketeering activity" for purposes of subsection (a) means the commission of at least two of these predicate acts, provided that they "are interrelated" and "were done 'in furtherance of one or more incidents, schemes, or transactions.'" *Wylie v. Denton*, 323 Ga.App. 161, 746 S.E.2d 689, 693 (2013) (quoting Ga. Code Ann. § 16–14–3(4)(A)) (footnote omitted). Finally, a plaintiff must also show that the defendant's violation of the statute proximately caused the plaintiff's injury. *Wylie*, 746 S.E.2d at 69.

The purported manipulation of the Seniority Plan is "[c]entral to the [alleged] scheme" for Plaintiffs' RICO claim. (Doc. 1-1, pg. 14, ¶45.)  Plaintiffs allege some wire fraud occurred in 2019 and 2021 regarding the dispute over seniority. (Doc. 1-1, pg. 17, ¶56-57.)  Without any specificity, Plaintiffs allege ILA Local 1475 and GSA transmitted or caused to transmit wire communications for the purpose of executing a scheme to defraud. (*Id.*)  Notably, one predicate offense is

embezzlement in violation of 29 U.S.C. §501(c) which provides for an action against a "person" who has violated 29 U.S.C. §501(a). To be found to have violated 29 U.S.C. §501(c) requires analysis of collective bargaining agreements to determine whether that person, being an officer, agent, shop steward, and other representative of a labor organization "…manage[d], invest[ed], and expend[ed] the same in accordance with its constitution and bylaws, and any resolutions of the governing bodies adopted thereunder…"[1] *United States v. Goad*, 490 F.2d 1158, 1165 (8th Cir. 1974) ("One must willfully take the salary increases, with knowledge that the increases are not authorized according to the Union's constitution and bylaws, to violate section 501(c).")

Plaintiffs generally allege ILA Local 1475 and GSA "embezzled funds and assets of the Local, "manipulated" the seniority system, "diverted" union resources, and denied Plaintiffs equal benefits and representation of union membership. (Doc. 1-1, pg. 14, 18-19, ¶45, 58.) Plaintiffs also generally allege ILA Local 1475 (in the 2022 NLRB proceedings) and either ILA Local 1475 or GSA (in the 2019 NLRB proceedings) committed the "crime" of making false statements regarding the implementation of hiring hall seniority rules during proceedings under the NLRB's jurisdiction. (Doc. 1-1, pg. 19-20, ¶59.) The result of these acts was to "thwart reasonable attempts to change" the 2013 MOU in a "way fair to the Deck and Dock workers." (Doc. 1-1, pg. 20, ¶61.)

In order to determine union benefits, seniority systems including the Seniority Plan, use of funds, and every basis presented for this claim, requires an analysis of the CBAs. It is axiomatic that an analysis of the CBAs has to be the first step to determine the scope of benefits, how benefits are allocated, the specific seniority systems established, how funds can or cannot be used, and what each member will receive based upon their membership before any determination of "unfair" or "discriminatory" practices can be made. Because an analysis of the CBAs is required to evaluate

---

[1] Plaintiffs have not been granted leave to pursue any claim under 29 U.S.C. §501(b).

any part of this claim, it is preempted by the LMRA and must be dismissed.

### 2. Plaintiffs' civil conspiracy claims are preempted.

The allegations of wrongdoing to establish Plaintiff's Count II and Count V civil conspiracy claims against various Defendants, including GSA are violations or denial of benefits provided by their union membership; thus, requiring analysis of benefits provided in the CBAs. Therefore, both civil conspiracy claims are preempted and must be dismissed.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (6), 573 S.E.2d 455 (2002) (citation and punctuation omitted). "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy." *Id.* (citation and punctuation omitted); see, also, *Patel v. Diplomat 1419VA Hotels, LLC*, 358 Ga.App. 732, 856 S.E.2d 340 (2021) ("To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.").

Count II alleges a conspiracy, similar to the allegations supporting Count I, to "defraud the Plaintiffs and other Deck and Dock workers of the full benefits of union membership." (Doc. 1-1, p. 22, ¶72.) This purported conspiracy "discriminated" against Deck and Dock workers by "depriving them of fair representation, equal benefits and equal employment opportunities." (Doc. 1-1, pg. 22-23, ¶72.)  Any determination of fair representation, equal benefits or equal employment opportunities for some members versus others will require an analysis of the CBAs.

Count V alleges a conspiracy to "circumvent the seniority system for job selection" and involved an alleged "agreement between union leadership and shipping company representatives

to allow selection of workers by name and not the alphabetical rotation or seniority-based system. (Doc. 1-1, pg. 28-29, ¶92.) Plaintiffs allege overt acts, alleged committed by every Defendant without distinction, include implementing special provisions of the 2013 MOU; creating a separate dispatch system deviating from standard procedures; bypassing alphabetical rotation system that was standard practice; denying qualified Deck and Dock workers access to jobs they were eligible based on seniority; and manipulating hiring hall procedures. (Doc. 1-1, pg. 29, ¶94.) Plaintiffs allege Defendants converted "moneys, funds, property and assets of the Local." (Doc. 1-1, p. 18, ¶ 58(a).) The crux of any "union principles," rotation systems, "standard practices," seniority-based selection systems or benefits are set forth in the CBAs.  Any alleged injury for failing to provide Plaintiffs' "union principles" or "benefits" begins with the CBAs; therefore, both civil conspiracy claims are preempted by Section 301 and must be dismissed.

### 3.    Plaintiffs' Breach of Fiduciary Duty Claim is Preempted.

Count III alleges a claim for relief against GSA rooted in a breach of fiduciary duty.  To support a claim of breach of fiduciary duty, a plaintiff must prove the existence of such duty, breach of that duty, and damages proximately caused by the breach. *Bienert v. Dickerson,* 276 Ga.App. 621, 623, 624 S.E.2d 245 (2005). Plaintiffs cannot establish any plausible claim for relief against GSA for breach of fiduciary duty without an analysis of the CBAs; therefore, this claim is preempted by § 301 and must be dismissed.

Plaintiffs allege GSA owes them a fiduciary duty because they are "union members" and a duty exists based upon "principles of union representation and Georgia case law regarding fiduciary relationships." (Doc. 1-1, pg. 24, ¶ 78.) Any determination of whether or not GSA owed a fiduciary duty to Plaintiffs due to their union affiliation and whether any such duty was breached requires interpreting the principles of their union representation dictated by the CBAs. Any

conclusory allegation that "case law" establishes any plausible basis for any fiduciary duty to GSA fails to establish any plausible duty. While Plaintiffs do not provide any further basis that conclusory "case law," GSA was not a partner with Plaintiffs, was not in a principal and agent relationship with Plaintiffs and was not subject to any contractual relationship dictating a fiduciary relationship. *See*, OCGA § 23–2–58. GSA did not have any confidential relationship with Plaintiffs that would give rise to a fiduciary duty. GSA represents its direct employer members, not Plaintiffs. (Doc. 1-1, pg. 39.) It is well settled that "[i]n the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." *Dover v. Burns*, 186 Ga. 19, 26, 196 S.E.2d 785 (1938).

Even assuming *arguendo*, GSA has some fiduciary duty (which it does not), that duty would only arise from the CBAs. *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1184 (11th Cir. 2010); *citing, Schuver v. MidAm. Energy Co.*, 154 F.3d 795, 799 (8th Cir.1998) (holding § 301 preempted claim for breach of fiduciary duty because court had to determine whether alleged oral contracts underlying that claim were superseded or contradicted by terms of CBA.) And, any determination of a "breach" of GSA's purported fiduciary duties by failing to implement the MOUs in a fair and non-discriminatory manner, misusing dues, imposing disproportionate and inappropriate disciplinary actions, failing to provide equal representation, training and access to preferred job opportunities, and creating a discriminatory dual seniority system, Doc. 1-1, pg. 24-25, ¶ 79-80, would require analysis of the obligations in the CBAs.

### C.  Plaintiffs' Preempted Claims are Time-Barred

If this Court does not dismiss Plaintiffs' claims outright due to preemption, the claims must be dismissed because they are time-barred. Plaintiffs filed their complaint on June 9, 2025. All of Plaintiffs' preempted state law claims are subject to the six-month statute of limitations from §

10(b) of the NLRA. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). Any attempt to sidestep the six-month statute of limitations will fail because "[e]ven if not all breaches of the duty are unfair labor practices, however, the family resemblance is undeniable, and indeed there is a substantial overlap." *DelCostello*, 103 S. Ct. at 2293–94. Plaintiffs' allegations of unfair, arbitrary, or discriminatory treatment of workers by the union and GSA land their claims squarely into an unfair labor practice claims and subject to the six-month statute of limitations. *Id.* Since Plaintiffs allege their claims are based on events from many years ago, with the most recent event occurring in 2022, their claims are time-barred. *Bartholomew v. AGL Res., Inc*., 361 F.3d 1333, 1342 (11th Cir. 2004). (Doc. 1-1, pg. 9, 12, 15, 20, ¶¶ 28, 39, 48-49, 60.)

### D.  Plaintiffs Failed to Exhaust Grievance Procedures

Notably absent from Plaintiffs' Complaint is any allegation of any grievance filed, pursued or exhausted by any named Plaintiff regarding any issues raised in the Complaint. Plaintiffs allege various acts of wrongdoing resulting from a grievance or proceedings filed by someone other than Plaintiffs with the NLRB in 2011 (Doc. 1-1, pg. 7, ¶22-23), the NLRB in 2019 related to the seniority system, *id.*, p. 14, ¶47, and two proceedings in 2022, Case No. 10-CB-288927 and Case No. 10-CB-288719, regarding the implement of "the MOU," the fairness of the hiring hall seniority rules, and the merger of the Deck/Dock list with the Clerk/Checker list. (*Id*., ¶48-49.) Yet, there is not one allegation of any proceeding or grievance by any Plaintiff. Thus, all claims are subject to dismissal for failure to exhaust the required grievance procedure because any "contractual grievance and arbitration procedures must be exhausted before an employee files a § 301 suit." *Bowen v. U.S. Postal Service*, 459 U.S. 212, 232, 103 S. Ct. 588, 74 L. Ed. 2d 402 (1983).

Seniority is to be "decided and enforced on a local basis;" and here, the system is governed

by the Seniority Plan which provides any dispute shall be referred to the Seniority Board. (Doc. 1-1, Exhibit B, pg. 44, ¶ 2.) Plaintiffs did not submit any dispute to the Seniority Board. Plaintiffs allege they received harsher punishments for offenses and were denied options for training. (Doc. 1-1, pg. 43, ¶ 42.) Plaintiffs' Complaint is devoid of any grievance proceedings regarding unfair punishments or denials for training opportunities. By invoking an alleged breach of the Seniority Plan or claiming unfair treatment compared to other members, Plaintiffs are bound by the Seniority Plan and the CBAs. "Employees claiming breach of a collective bargaining agreement or wrongful termination of employment by their employer are bound by that agreement's terms providing a method for resolving disputes." *Mason v. Continental Group, Inc*., 763 F.2d 1219, 1222 (11th Cir. 1985). This same mandate applies here; yet, no Plaintiff exhausted any grievance procedures.

### E.    All Claims for Relief Fail to State a Plausible Claim for Relief

If Plaintiffs' claims against GSA are not dismissed pursuant to preemption, being time-barred or due to their failure to exhaust, the claims must be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This Court may exercise its supplemental jurisdiction authority to dispose of these implausible claims as a matter of law. *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1089 (11th Cir. 2004). When determining whether to dismiss the state law claims, this Court must consider "the circumstances of the particular case, the nature of the state law claims, [and] the character of the governing state law," as well as judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Ameritox, Ltd. v. Millennium Labs., Inc*., 803 F.3d 518, 532 (11th Cir. 2015).

### 1.    Plaintiffs' RICO Claim Fails to State a Claim with Particularity.

Plaintiffs' Count I alleges violations of Ga. Code Ann. §§ 16-14-4(a). (Doc. 1-1, pg. 21, P. 67.) Plaintiffs' RICO claim fails to plead this claim with particularity as required by Federal Rule

Civil Procedure 9(b) and Local Civil Rule 9.1. To establish a violation under subsection (a), Plaintiffs have to show is "proof that the defendant committed predicate offenses ... at least twice." *Cobb Cnty. v. Jones Grp., P.L.C.*, 218 Ga.App. 149, 460 S.E.2d 516, 521 (1995); accord *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009). And a "pattern of racketeering activity" for purposes of subsection (a) means the commission of at least two of these predicate acts, provided that they "are interrelated" and "were done 'in furtherance of one or more incidents, schemes, or transactions.'" *Wylie v. Denton*, 323 Ga.App. 161, 746 S.E.2d 689, 693 (2013) (quoting Ga. Code Ann. § 16–14–3(4)(A)) (footnote omitted). Finally, a plaintiff raising a civil Georgia RICO claim must also show the defendant's violation of the statute proximately caused plaintiff's injury. *Wylie*, 746 S.E.2d at 693.

### a. Plaintiffs Failed to Plead a Pattern of Racketeering Activity

In support of their RICO claim, Plaintiffs rely on the predicate acts of wire fraud in violation of 18 U.S.C. §1343, embezzlement in violation of 29 U.S.C. §501(c) and making false statements in violation of O.C.G.A §16-10-20 during NLRB hearings. Ultimately, Plaintiffs' RICO claim fails to plead any predicate act with particularity sufficient to maintain the claim. Specifically, Plaintiffs allege ILA Local 1475 and GSA, without any distinction, utilized wires to send "writings, signs, signals, pictures, or sounds" to execute their "scheme to defraud" Plaintiffs. (Doc. 1-1, pg. 17-18, ¶56-57.) Plaintiffs generally allege both ILA Local 1475 and GSA "embezzled" union funds, "manipulated" the seniority systems, "diverted" union resources and denied benefits of union membership. (Doc. 1-1, pg. 18-19, ¶58.) Plaintiffs allege ILA Local 1475 (in the 2022 NLRB proceedings) and ILA Local 1475 and GSA (in the 2019 NLRB proceedings) committed the "crime" of making false statements. (Doc. 1-1, pg. 19-20, ¶59.) Plaintiffs claim these acts were related in some way simply because they are part of an "overarching scheme to

defraud" the workers out of seniority and benefits. (Doc. 1-1, pg. 20, ¶ 63). Plaintiffs further allege

they have been "injured" as a result of this conduct. (Doc. 1-1, pg. 20, ¶ 68.)

### i.    Fraud Claims Were Not Plead With Particularity

Plaintiffs' allegations of fraud must comply with the heightened pleading standard set forth

in Fed. R. Civ. P. 9(b). *Am. Dental Ass'n v. Cigna*, 605 F.3d 1283, 1291 (11th Cir. 2010); *see*

*Burgess v. Religious Technology Center, Inc.,* 600 F. App'x 657, 663 (11th Cir. 2015 (noting "…,

a [Georgia] RICO claim based on fraud must be pleaded with specificity"). To satisfy Rule 9(b)'s

particularity requirement "a plaintiff must allege: '(1) the precise statements, documents, or

misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the

content and manner in which these statements misled the Plaintiffs; and (4) what the defendants

gained by the alleged fraud.'" *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1318 (N.D. Ga 2021).

In short, Plaintiffs must set forth "the who, what, when[,] where, and how" circumstances of the

fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted).

Plaintiffs failed to plead any allegations of fraud with particularity and have relied upon

vague generalized conclusions and allegations via an impermissible shotgun pleading. A shotgun

pleading is where the plaintiff has failed "to identify his claims with sufficient clarity to enable the

defendant to frame a responsible pleading." *Holtz v. Harpagon Co., LLC*, No. 1:09-cv-03085, 2010

WL 2595075, at *4 (N.D. Ga. June 25, 2010) (quoting *Sledge v. Goodyear Dunlop Tires North*

*Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001)). When a plaintiff presents a shotgun pleading,

"it is virtually impossible to know which allegations of fact are intended to support which claim(s)

for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir.

1996).   The scheme Plaintiffs allege purports to be complex involving multiple parties and

spanning years; yet, Plaintiffs make zero distinction between any defendant, resorting to lumping

every defendant together alleging boilerplate acts. Even in complex cases involving multiple defendants, "the complaint must not lump together all of the defendants, as 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011) (quoting *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)).

Plaintiffs do not allege any specific act of wire fraud in 2021 or 2019 by any defendant, but rather restate the text provided in 18 U.S.C. § 1343. (Doc. 1-1, p. 16-18, ¶ 56-57.) Plaintiffs completely failed to allege GSA or any defendant committed any specific act of wire fraud in 2021 or 2019. (*Id.*) Plaintiffs do not allege any damage occurred because of any alleged wire fraud. (*Id.*)

### ii.    GSA is not an Officer or Employee pursuant to 29 U.S.C.A. §501(c)

Plaintiffs' allegations of embezzlement are based upon an alleged violation of 29 U.S.C.A §501(c); however, Plaintiffs cannot rewrite the statute to apply to GSA. 29 U.S.C.A §501(c) states:

Embezzlement of assets; penalty

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which ***he is an officer, or by which he is employed, directly or indirectly,*** shall be fined not more than $10,000 or imprisoned for not more than five years, or both. (Emphasis added.)

GSA is not an officer nor an employee of the union; therefore, it cannot violate 29 U.S.C.A §501(c). Plaintiffs have completely failed to allege how or when GSA had any possession, use or ability to convert any union dues because it would not have any opportunity to do so. (Doc. 1-1, p. 18, ¶ 58.) Plaintiffs allege Defendants "effectively embezzled financial contributions by the Deck and Dock workers." (Doc. 1-1, p. 18, ¶ 58(d).) It is not clear how a party can "effectively" embezzle financial contributions since fraudulent intent is required to embezzle. *See, e. g.*, *United States v. Rubin*, 591 F.2d 278, 282 (5th Cir. 1979). And, none exists here.

### iii.    Plaintiffs Failed to Plead any "False Statements" with Particularity

Finally, Plaintiffs make a vain, and failing, attempt to support their Georgia RICO claim through the "crime of making False Statements in violation of O.C.G.A. § 16-10-20." (Doc. 1-1, p. 19, ¶ 59.) Specifically, Plaintiffs allege "representatives of the Local 1475," not GSA, made statements during an NLRB proceeding in 2022. (Doc. 1-1, p. 15, 19, ¶ 48, 59(a).) Then Plaintiffs make one singular generic, boilerplate allegation against GSA that in 2019, both "RICO Defendants made similar false statements in NLRB Case No. 10-CB-2288719…." regarding the "fairness and non-discriminatory nature of the separate seniority system." (Doc. 1-1, p. 15, 20, ¶ 47, 59(d).) Notably, Plaintiffs failed to allege any statements they claim were false. Vague allegations that some unknown, undisclosed statement violates O.C.G.A. § 16-10-20 is insufficient to state a plausible claim. Similar to the failure to plead fraud with particularity, allegations of "making false statements" lack the specificity required by Rule 9(b) to state a viable predicate act to substantiate a RICO claim. *Jannuzzo v. Glock, Inc.*, 721 F. App'x 880, 885 (11th Cir. 2018); *citing, Ambrosia Coal & Const. Co. v. Pages Morales,* 482 F.3d 1309, 1316-17 (11th Cir. 2007).

### b.    Plaintiffs Failed to Plead any Knowledge Element

Additionally, "[a]n essential element of any fraud claim is that defendant knew his representation was false." *First Fin. Sav. & Loan Ass'n v. Title Ins. Co. of Minn.*, 557 F. Supp. 654, 661 (N.D. Ga. 1982). This is equally true for the predicate acts of fraud. *See Rowe*, 181 F. Supp. 3d at 1190 ("An allegation that a defendant committed mail or wire fraud in furtherance of a RICO scheme requires a showing 'that the defendant held the requisite mens rea ... a "conscious knowing intent to defraud."') (quoting *Pelletier*, 921 F.2d at 1499 (quoting *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980)). In this case, the Complaint does not specify what representations were made nor does it allege any Defendant knew the representations were false.

And, Plaintiffs cannot make such allegations because a Defendant's knowledge "cannot be merely conclusory and unsupported by any factual allegations." *Id*. (internal quotation marks omitted).

Further damaging to this claim is any allegation of wire fraud or making false statements in 2019 falls outside the five-year statute of limitation for civil RICO actions. *See,* O.C.G.A. § 16–14–8. Even when viewed in Plaintiffs' favor, the only allegations within the five-year statute of limitations are conclusory allegations of wire fraud in 2021, and the impossible embezzlement of funds GSA never had possession or control nor could be held accountable under federal law. Plaintiffs failed to establish any plausible RICO claim against GSA warranting dismissal.

### 2. Plaintiffs' Civil Conspiracy Claims fail because Plaintiffs did not Plead a Tort.

Count II and Count V allege claims stylized as civil conspiracies. However, because Plaintiffs did not plead any underlying tort, they cannot maintain any claim for conspiracy even if not precluded by preemption. By definition, "discrimination," depriving "fair representation, equal benefits, and equal employment opportunities", or an agreement to "circumvent the seniority system for job selection," are not torts. (Doc. 1-1, p. 22, 23, 28-29.) Any alleged Georgia civil RICO violation or breach of fiduciary duty are also not torts. Any attempt to stretch the pleading to a vague "fraud" also fails Rule 9(b)'s particularity requirement. In sum, Plaintiffs' conspiracy claims are based on non-tort acts which fail to state a plausible claim for relief requiring dismissal.

Finally, these claims are also time-barred. The statute of limitations period for a conspiracy claim in Georgia is measured by the underlying tort. *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695 (1996); *Lee v. Gore*, 221 Ga.App. 632, 635 (1996). While not conceding any underlying tort has been plead, Plaintiffs are likely to assert their conspiracy claims are grounded in allegations GSA, along with others, conspired to defraud them. The statute of limitation for fraud is four years. *Hamburger v. PFM Capital Management, Inc.*, 286 Ga.App. 382, 387 (2007), citing O.C.G.A. §

9–3–31. The overt acts plead in support of Count II include the 2013 MOU, 2019 MOU, wire fraud in 2019, and generic allegations of acts with no dates or timeframes within four years of filing the Complaint. (Doc. 1-1, pg. 23, ¶ 75.) Likewise, the overt acts plead in support of Count V include the 2013 MOU, and generic allegations of acts with no dates or timeframes. (Doc. 1-1, pg. 29, ¶ 94.) The last overt act by any alleged conspirator, the report by the Executive Council issued on June 4, 2021, and decided to appoint a committee to investigate "seniority issues," occurred more than four years prior to filing the Complaint. (Doc. 1-1, pg. 10, ¶ 37.) Plaintiffs' conspiracy claims against GSA fail to state a claim and/or are time-barred; thus, should be dismissed.

### 3. Plaintiffs' Breach of Fiduciary Duty Claim fails because GSA is not a Fiduciary to Plaintiffs.

If Count III is not dismissed based upon preemption, it must be dismissed because GSA does not owe Plaintiffs any fiduciary duty. GSA represents its "direct Employer members." (Doc. 1-1, pg. 39 (MOU).) GSA does not represent Plaintiffs and does not hold any fiduciary duty to Plaintiffs. The failure to establish GSA's fiduciary duty is fatal to this claim. I.

If Count III is not dismissed pursuant to preemption, or the lack of a viable fiduciary duty, this claim is also time-barred. Georgia has no specific statute of limitation for breach of fiduciary duty claims. Instead, the courts examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation. *See Reaugh v. Inner Harbour Hosp., Ltd*., 214 Ga.App. 259, 260(1), 447 S.E.2d 617 (1994). Plaintiffs allege their breach of fiduciary duty claim against GSA is based upon discrimination, unfair practices and equal employment opportunities through the dual seniority system created in 2013 and 2019. (Doc. 1-1, pg. 8, 24-25.)

Title VII governs claims for relief for discrimination or equal employment opportunities. Notably, before a plaintiff can sue under Title VII, the plaintiff must exhaust their administrative remedies by filing a Charge of Discrimination within 300 days of the discriminatory event. 42

U.S.C.§ 2000-e-5(e)(1). Since their breach of fiduciary duty claim is grounded in allegations of discrimination, the breach of fiduciary duty claim would also be subject to the same 300-day statute of limitation. Filing a lawsuit 301 days after a discriminatory event would result in the claim being time-barred because Title VII time frames begin running "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e-5(e)(1). At no time prior to filing this lawsuit, much less within 300 days of the discriminatory events alleged in the Complaint, did any named Plaintiff file a Charge of Discrimination (or even a grievance).

### F. Claims for Damages and Fees are Derivative and Cannot Stand Alone.

Count VI and Count VII seek recovery of punitive damages and attorneys' fees pursuant to O.C.G.A §16-14-6(c). When Plaintiffs' substantive claims fail, their derivative claims for punitive damages and attorneys' fees also fail. *See, generally, Patel v. Diplomat 1419VA Hotels, LLC*, 856 S.E.2d 340, 348 (Ga. Ct. App. 2021); *Wright v. Apartment Investment and Mgmt. Co.*, 315 Ga. App. 587, 590 (1) (a) n.6, 726 S.E.2d 779 (2012) (noting derivative claims for punitive damages and attorney fees failed when underlying tort claims failed).

### IV.  <u>CONCLUSION</u>

Plaintiffs' state-law claims must be dismissed because they are preempted by federal law and are time-barred for being filed outside the six-month statute of limitation. Additionally, no Plaintiff exhausted any required grievance proceedings required to bring these claims. Even if this Court determines dismissal is not warranted for each of these reasons, Plaintiffs' Complaint fails to state a claim against GSA based on the required elements for each claim as set forth herein and/or because they are time-barred under state law. Accordingly, GSA respectfully requests the Court dismiss the Complaint, award GSA its fees and costs and any other relief deemed proper.

Dated: September 16, 2025          Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP
*/s/ Theresa L. Nelson*
Theresa L. Nelson (GA Bar No. 601095)
Gordon Rees Scully Mansukhani, LLP
55 Ivan Allen Jr. Blvd. N.W.
Suite 750
Atlanta, GA 30308
Ph.: (404) 869-9054
Email: tlnelson@grsm.com

*Attorney for Defendant Georgia Stevedore Association*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and complete copy of the foregoing have been served through the Court's electronic filing system to all counsel of record on September 16, 2025.

I also certify that a true and complete copy of the foregoing has been served to the following via electronic mail service on September 16, 2025.


Bryan Henderson
Guilmette Pulver, LLC
1355 Peachtree St. NE, Ste. 1125
Atlanta, GA 30309
Email:  bryan@guilmettehenderson.com
*Attorney for Plaintiffs*



/s/ *Theresa L. Nelson*
Theresa Nelson