**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| **STEPHEN COWART, JOSEPH HURST, AND KENNETH RAHN, JR.,** | **Civil Action No.** |
| Plaintiffs, | **4:25-cv-00199-RSB-CLR** |
| v. | |
| **ILA LOCAL 1475 CLERKS AND CHECKERS UNION, INC., et al.** | |
| Defendant. | |

## DEFENDANT GEORGIA STEVEDORE ASSOCIATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

COMES NOW, Defendant Georgia Stevedore Association ("GSA") and respectfully submits this Reply Brief in Further Support of its Motion to Dismiss (Doc. 33 and 33-1) Plaintiffs Stephen Cowart, Joseph Hurst and Kenneth Rahn, Jr. (collectively, the "Plaintiffs") Complaint (Doc. 1-1) in its entirety, for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In addition to the authorities and arguments presented in GSA's Motion to Dismiss (Doc. 33 and 33-1), GSA further shows the Court as follows:

### I.    SUMMARY

Plaintiffs' Complaint fails to present any viable claims for relief because (1) Plaintiffs' state-law claims are preempted by §301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "LMRA"); (2) Plaintiffs' preempted claims are time-barred; (3) Plaintiffs failed to exhaust mandatory grievance proceedings; and (4) Plaintiffs' state-law claims fail to state a viable plausible claim for relief and/or are barred by applicable statutes of limitation under Georgia law.  Plaintiffs'

Memorandum in Opposition (Doc. 50) (the "opposition") does nothing to establish a plausible basis for this Court to deny GSA's Motion. Plaintiffs' Motion to Remand (Doc.38) also provides no basis for maintaining any claim for relief in this Court.[1] However packaged, Plaintiffs' claims depend on analyzing the MOUs and Collective Bargaining Agreement ("CBA") which govern their union membership and benefits to determine whether any Defendants' conduct constituted a breach, fraud or conspiracy.  The alleged unlawful acts, breaches of fiduciary duty and conspiracy claims presented by Plaintiffs are inextricably intertwined with these labor agreements, making §301 preemption required in this case. Plaintiffs cannot separate their claims from the MOUs and CBA by characterizing them as state-law claims. The Supreme Court has routinely rejected similar attempts of such artful pleading.

Even under the most generous reading, Plaintiffs' Complaint is preempted by federal law. Regardless of any attempts to plead their way around preemption, statute of limitations and the mandates of Federal Civil Rule 12(b)(6), Plaintiffs' Complaint fails to state any viable claim for relief against GSA, as a matter of law, and should be dismissed with prejudice.

## ARGUMENT

I.    **Plaintiffs' Complaint, and all Claims therein, Must Be Dismissed.**

A.    **Plaintiffs' State Law Claims are Substantially Dependent Upon an Analysis of the CBA and MOUs; therefore, the Claims are Preempted.**

Plaintiffs narrow reading of § 301 of the LMRA preemption is not supported by law nor their own Complaint. Section 301(a) provides federal jurisdiction over "[s]uits for violation of

---

[1] GSA has opposed Plaintiffs' Motion to Remand (Doc. 38), along with the other Defendants in this action. (*See*, Doc. Nos. 47, 56 and 58). GSA incorporates the authorities and arguments set forth in Doc. Nos. 47, 56 and 58 as further support for grounds of preemption as if fully restated herein.

contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Eleventh Circuit likewise confirms that § 301 preempts any state law claim where a resolution "arises from or is substantially dependent on analysis of a collective bargaining agreement." *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3, (1987); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), *Hood v. Sweetheart Cup Co., Inc.*, 816 F. Supp. 720 (S.D. Ga. 1993), *aff'd sub nom. Hood v. Sweetheart Cup Co.*, 11 F.3d 168 (11th Cir. 1993). Any analysis of preemption turns on whether determining liability necessitates construing the CBA and MOUs, not Plaintiffs' characterization of the claim. *See also Allis-Chalmers*, 471 U.S. at 213.

Plaintiffs' contention that the MOUs or the CBA "exist in the background" is a fallacy. (Doc. 50, at 6.) Further, Plaintiffs' argument that a fiduciary duty is a "textbook example of a nonnegotiable right" under state law is equally baseless. (Doc. 50, at 5.) Plaintiffs do not cite any authority for this argument because it is well settled that a fiduciary duty arises from contract or the relationship of the parties. *Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194, 201, 750 S.E.2d 445, 452 (2013) (citations omitted). The only relationship here was established through the MOUs and CBA. Absent these contracts, there is no relationship, much less a fiduciary relationship, between any defendant and the Plaintiffs.

While Plaintiffs now attempt to characterize their claims solely as those arising from state law, they are not. The Complaint is rife with allegations regarding the alleged discriminatory or unfair interpretation and application of the terms of the 2013 Memorandum of Understanding ("2013 MOU") and the 2019 Memorandum of Understanding ("2019 MOU") between Local 1475 and GSA. *See* Doc. 1-1, Compl., *et. seq.*, and Ex. A, 2013 MOU; and Ex. B, 2019 MOU. The MOUs are agreements between employers and a labor organization and; thus, are contracts within

the meaning of Section 301. *See Retail Clerks Ass'n v. Lion Dry Goods,* 369 U.S. 17, 28-29 (1962). The Master Contract and the Local Agreement, are incorporated by reference into the 2013 MOU. Doc. 1-1, Exhibit A, 2013 MOU, ¶¶ 2, 3, 5, 8.

Plaintiffs allege the 2013 MOU allegedly created a two-tiered caste system and robbed them of benefits of union membership. (Doc. 1-1, pg. 8-9.) Then, the 2019 Seniority Agreement calcified the existing inequities between members. (Doc. 1-1, pg. 11.)  Per the CBAs, seniority is to be "decided and enforced on a local basis;" and here, the Seniority Plan governs the local seniority system. (Doc. 1-1, pg. 44-52, Exhibit B.) Plaintiffs' contention that their claims are based on the implementation of the MOUs, but somehow do not require analysis of the MOUs, is completely without any merit. Any alleged conspiracy, fraud or breach directly implicate the negotiation, interpretation, and application of these agreements, placing these claims squarely within §301's preemptive scope. *See Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 861-62, 95 L. Ed. 2d 791 (1987).

Plaintiffs' reliance on *Livadas v. Bradshaw*, 512 U.S. 107 (1994) is misplaced. The holding from *Livadas* cuts against Plaintiffs despite their representation otherwise. The issue in *Livadas* was the Court's review of California law requiring employers to pay all wages due immediately upon an employee's discharge, California Labor Code § 201, which imposes a penalty, California Labor Code § 203; and places responsibility for enforcing these provisions on the Commissioner of Labor. After Livadas's employer refused to pay her wages owed upon discharge, she filed a penalty claim. Upon receipt, the Commissioner responded that a policy construing Labor Code § 229 barred him from enforcing such claims on behalf of individuals, like Livadas, whose employment terms and conditions are governed by a collective-bargaining agreement containing

an arbitration clause. Livadas brought an action under 42 U.S.C. § 1983, alleging the nonenforcement policy was pre-empted by federal law because it abridged her rights under the National Labor Relations Act (NLRA). The only issue raised by Livadas's claim, whether Safeway "willfully fail[ed] to pay" her wages promptly upon severance, was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer. *Livadas*, 512 U.S. at 125. The claim in *Livadas* required a determination of one fact: were final wages paid to her on the last day of employment? Here, the analysis is not so simple nor entirely unrelated to the labor contracts.

Instead, Plaintiffs' claims are rooted in the alleged denial of union benefits, including but not limited to, alleged use of funds and assets they claim were "embezzled," depriving them of fair representation, equal benefits and equal employment opportunities, discriminatory creation and implementation of the seniority system, that the seniority system "manipulated," union resources "diverted," and are substantially dependent on an analysis of the CBAs. (Doc. 1-1, pg. 12-14, 18-19, 23.) Or a fiduciary relationship which could only exist because of the CBA. The only way to determine a denial of benefits begins with an analysis of what benefits are provided by the MOUs and CBA; thus, Plaintiffs cannot avoid preemption by § 301 of the LMRA by characterizing their claims as those arising from state law.

**B.    The Elements of Plaintiffs' State Law Claims Require an Analysis of the CBA and MOUs; therefore, the Claims are Preempted.**

The Eleventh Circuit has held that "[i]n deciding whether state law tort claims require interpretation of the terms of a labor contract, courts [should] . . . look to the elements of the state law claims." *Lightning v. Roadway Express,* 60 F.3d 1551, 1557 (11th Cir.1995). Plaintiffs failed to specifically address the reasons for preemption of each claim presented in their Complaint, but

5

rather, solely argued their claims are not preempted. Each claim presented here stems from allegations of the denial fair representation, misuse of union dues, equal benefits and seniority arising from union membership. Because Plaintiffs' claims are rooted in the alleged denial of union benefits, they are dependent on an analysis of the CBA or MOUs.

Plaintiffs' Count I, RICO claim, alleges violations of O.C.G.A. §16-14-1, *et seq*., by Defendants ILA Local 1475 and GSA "working together to protect union benefits for existing Clerks and Checkers, and by not giving equal protection to Deck and Dock workers with valid membership…" (Doc. 1-1, pg. 16, ¶53; see also, pg. 13, ¶ 43-46.) Plaintiffs claim to have filed their RICO Statement in compliance with Local Rule 9.1. (Doc. 50 at p. 9.). However, the docket does not indicate anywhere, much less fourteen (14) days after removal, that Plaintiffs filed a RICO statement as required by Local Civil Rule 9.1.

For this Court to determine whether ILA Local 1475 and GSA's conduct was unfair or resulted in a denial of union benefits as alleged to support their RICO claim, this Court necessarily must consider the purported manipulation of the Seniority Plan which is "[c]entral to the [alleged] scheme" for Plaintiffs' RICO claim. (Doc. 1-1, pg. 14, ¶45.) Plaintiffs now argue the Seniority Plan, which grew from the MOUs, needs no analysis to determine their claims, and, that a determination of what benefits and representation of union membership grew from the MOUs and CBA is unnecessary. Their own Complaint betrays this argument. If the formation and implementation of the Seniority Plan was corrupt, as Plaintiffs allege, the starting point to make such a determination is the MOUs. The process of putting the Seniority Plan into effect, in any way, began when the plan was established in the MOUs. An analysis of the CBA and MOUs is the first step to determine the scope of benefits, how benefits are allocated, the specific seniority

systems established, how funds can or cannot be used, and what each member will receive based upon their membership before any determination of "unfair" or "discriminatory" practices can be made. Since the MOUs are contracts under § 301 and incorporate the CBA which is also covered by § 301, preemption by the LMRA is undeniable.

Likewise, the alleged wrongdoing Plaintiffs present to establish their civil conspiracy claims require analysis of the CBA. Both Count II and Count V allege violations of the benefits of union membership, the seniority system and specifically reference the MOUs. (Doc. 1-1, p. 22-23, ¶72; pg. 28-29, ¶92.) Once again, Plaintiffs urge the Court to look the other way despite referencing the MOUs and CBA throughout their Complaint, attaching copies of the MOUs to their Complaint, and alleging acts that require a baseline analysis of the MOUs. Any alleged damage to Plaintiffs for failing to provide them "union principles," representation or "benefits" begins with the CBA; therefore, both civil conspiracy claims are preempted by Section 301 and must be dismissed.

Count III alleges GSA breached a fiduciary duty to Plaintiffs; but, GSA does not owe Plaintiffs any fiduciary duty. Plaintiffs argue GSA has some amorphous duty that exists outside of the MOUs or the CBA. (Doc. 50 at pg. 6.) A fiduciary duty does not manifest out of thin air. Plaintiffs alleged GSA owes them a fiduciary to "represent them fairly and without discrimination," when GSA does not represent them in any way. (Doc. 1-1, pg. 24, ¶ 79; pg. 39.) Or that GSA owes them a duty to "ensure that union resources, benefits and opportunities were distributed equitably among all members," when GSA does not represent them in any way. (*Id*.) Plaintiffs allege GSA owes them a fiduciary duty because they are "union members" and a duty exists based upon "principles of union representation and Georgia case law regarding fiduciary relationships." (Doc. 1-1, pg. 24, ¶ 78.) Even if true, Plaintiffs fall into their own trap because

absent the MOUs or the CBA, Plaintiffs cannot establish the existence of a fiduciary duty owed by GSA. Absent these agreements, Plaintiffs have no relationship whatsoever with GSA.

Any conclusory allegation that "case law" establishes any plausible basis for a fiduciary duty fails and Plaintiffs did not present any authority to support such an inference. Even assuming *arguendo*, GSA owes Plaintiffs a fiduciary duty (which it does not), that duty would only arise from the MOUs or CBA. *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1184 (11th Cir. 2010); *citing, Schuver v. MidAm. Energy Co.*, 154 F.3d 795, 799 (8th Cir.1998) (holding § 301 preempted claim for breach of fiduciary duty because court had to determine whether alleged oral contracts underlying that claim were superseded or contradicted by terms of CBA.)  And any alleged breach of that (non-existent) fiduciary duties requires analysis of the CBAs.

Even giving Plaintiffs the benefit of the most generous reading of the allegations in their Complaint, any determination of whether or not GSA owed a fiduciary duty to Plaintiffs, whether any such duty was breached, or whether any conspiracy denied Plaintiffs' equal benefits of their union membership requires an analysis of the CBA and MOUs. Therefore, as a matter of law, Plaintiffs' claim are preempted by the LMRA.

### C.  Plaintiffs' Preempted Claims are Time-Barred.

Because Plaintiffs' claims are §301 claims disguised as state law claims, they are subject to the six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). Any attempt to sidestep the six-month statute of limitations will fail because "[e]ven if not all breaches of the duty are unfair labor practices, however, the family resemblance is undeniable, and indeed there is a substantial overlap." *DelCostello*, 103 S. Ct. at 2293–94. Plaintiffs' allegations of unfair, arbitrary, or discriminatory

treatment of workers by the union and GSA land their claims squarely into an unfair labor practice claims and subject to the six-month statute of limitations. *Id.* Plaintiffs filed their complaint on June 9, 2025. Since Plaintiffs allege their claims are based on events from many years ago, with the most recent event occurring in 2022, their claims are time-barred. *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1342 (11th Cir. 2004). (Doc. 1-1, pg. 9, 12, 15, 20, ¶¶ 28, 39, 48-49, 60.)

If the Court reads Plaintiffs' allegations are only alleging the formation of the MOUs was corrupt, the events in question occurred, at the latest, over six years prior to filing the Complaint because the MOUs were formalized on August 8, 2013 and April 1, 2019. (Doc. 1-1, pgs. 34-52.) Even adopting such a myopic reading of Plaintiffs' Complaint, Georgia's statutes of limitation for RICO, fraud, or breach of fiduciary duty bar these claims. Plaintiffs' circular arguments cannot rewrite their Complaint to avoid preemption or being time-barred.

While not conceding any underlying tort has been plead, Plaintiffs assert their conspiracy claims are grounded in allegations GSA, along with others, conspired to defraud them or breached a fiduciary duty. The statute of limitation for fraud and breach of fiduciary duty is four years. *Hamburger v. PFM Capital Management, Inc.*, 286 Ga.App. 382, 387 (2007), citing O.C.G.A. § 9–3–31 (fraud); *Huster v. J2 Glob. Commc'ns, Inc*., No. 1:14-CV-03304-ELR, 2016 WL 4577041, at *2 (N.D. Ga. Jan. 28, 2016) (breach of fiduciary duty). The overt acts plead in support of Count II include the 2013 MOU, 2019 MOU, wire fraud in 2019, and generic allegations of acts with no dates or timeframes within four years of filing the Complaint. (Doc. 1-1, pg. 23, ¶ 75.) Likewise, the overt acts plead in support of Count V include the 2013 MOU, and generic allegations of acts with no dates or timeframes. (Doc. 1-1, pg. 29, ¶ 94.) The last overt act by any alleged conspirator, the report by the Executive Council issued on June 4, 2021, and decided to appoint a committee to

investigate "seniority issues," occurred more than four years prior to filing the Complaint. (Doc. 1-1, pg. 10, ¶ 37.)

Plaintiffs also try to rewrite their breach of fiduciary duty claim as one based in fraud to avoid being time-barred under Georgia law. (Doc. 50, p. 7-8.) However, their Complaint states the claim is one based upon the "Creation of Unfair Practices," discrimination, unfair practices and equal employment opportunities through the dual seniority system created in 2013 and 2019. (Doc. 1-1, pg. 8, ¶¶24-25.) Nowhere in the Complaint do Plaintiffs allege any breach of fiduciary duty based upon fraud. Plaintiffs failed to address their failure to file any such charge and thus concede they failed to exhaust their administrative remedies under Title VII. 42 U.S.C.§ 2000-e-5(e)(1). *Brogdon v. Grady Mem'l Hosp. Corp*., No. 1:22-CV-4512-CMS, 2025 WL 948338, at *18 (N.D. Ga. Mar. 28, 2025) ("It is well-settled that a plaintiff's failure to respond to a defendant's argument in a motion for summary judgment results in that argument being deemed unopposed or conceded."), citing *Bonte v. U.S. Bank N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver" and "silence leaves us to conclude" a concession); *Dieudonne v. Yardley Car Co*., No. 19-60070-CIV-COHN/SELTZER, 2019 WL 12288179, at *7–8 (S.D. Fla. Aug. 22, 2019) (deeming hostile work environment claim abandoned where the plaintiff offered no response to the argument that the conduct he complained of was insufficiently severe or pervasive to establish a claim for hostile work environment); *White v. Ga. Dep't of Motor Vehicle Safety*, No. 1:06-cv-124-TWT, 2006 WL 1466254, at *1 (N.D. Ga. May 19, 2006) ("[I]t is well-accepted in this district that the failure to respond to arguments relating to a claim constitutes abandonment of the claim.")  Even if this claim is not dismissed as time-barred based on the six-

month statute of limitation, it is time-barred under Title VII.

**D. Plaintiffs Failed to Exhaust Grievance Procedures.**

Plaintiffs' opposition devotes one singular sentence to their failure to exhaust the required grievance procedures requesting the Court determine such a requirement is limited to § 301 actions. (Doc. 50, page 7.) Plaintiffs' circular logic is their own downfall. Because their claims are preempted by § 301, this provides the Court with one more avenue for dismissal. *Mason v. Continental Group, Inc*., 763 F.2d 1219, 1222 (11th Cir. 1985).

**E. All Claims for Relief Fail to State a Plausible Claim for Relief.**

**1. Plaintiffs' RICO Claim Fails to State a Claim with Particularity.**

If Plaintiffs' claims survive preemption, the failure to exhaust required grievance procedures, and applicable statutes of limitation, Plaintiffs' Complaint fails to present plausible claims for relief. Plaintiffs' RICO claim fails to plead any predicate act with particularity sufficient to maintain the claim. Plaintiffs now argue GSA conspired to violate the seniority rules by "allowing personal selection of workers rather than anonymous seniority-based selection." (Doc. 50, pg. 9.) Yet, Plaintiffs fail to cite where this allegation exists because such an allegation against GSA is absent from the Complaint.

Plaintiffs also argue their RICO claim is based on a breach of fiduciary duty or some fraud that assisted the purported scheme. The "scheme" alleged was that the workers would pay full union dues, contribute valuable work hours to the union's overall tally, and increase the union's bargaining power, while denying them benefits. (Doc. 1-1, pg. 9, ¶ 43.) GSA represents employers, not union members; thus, GSA owes Plaintiffs no fiduciary duty. Further, because GSA does not represent Plaintiffs, it could not have specifically participated in the receipt of any dues paid or

held or any union benefits given or denied. (Doc. 1-1, pg. 9, ¶ 43-45.)

Plaintiffs do not present a claim for fraud, but imply it as a basis for their other claims. The heightened pleading requirements for fraud-based claims under Rule 9(b) require Plaintiffs to specify the who, what, when, where, and how of the alleged fraud. Yet, Plaintiffs' Complaint fails to provide these specific details, instead relying on vague assertions of a scheme. Plaintiffs now argue their conspiracy claim could not be plead with particularity because of the secretive nature of the fraud. However, the secretive nature of conspiracies does not excuse Plaintiffs from their obligation to plead specific facts rather than conclusory allegations. Without these specifics, the Complaint fails to meet the particularity requirements for fraud-based claims. Further, it is beyond rebuke that GSA owes Plaintiffs no fiduciary duty under any interpretation of existing law. Thus, no tort has been properly plead as required to maintain these claims.

Plaintiffs argue GSA can be liable under Georgia's RICO statute even though GSA is not a union employee or officer who could directly violate 29 U.S.C. §501(c). Plaintiffs contend that under O.C.G.A. 16-14-4(c), any 'person' (including corporations) can conspire to violate RICO, regardless of whether they could commit the predicate act independently. Plaintiffs admit they did not state any claim for relief against GSA for embezzlement based upon an alleged violation of 29 U.S.C.A §501(c); however, Plaintiffs alleged such unsubstantiated allegations against GSA which they now appear to concede are invalid. Specifically, Plaintiffs allege the "RICO Defendants," which lump ILA Local and GSA together, "engaged in the crime of **Embezzlement of Union Assets** (sic) in violation of 29 U.S.C. 501(c)." (Doc. 1-1, p. 17, ¶ 58.) Plaintiffs then allege the RICO Defendants, which includes GSA, "as officers and representatives of the Local" which GSA is not, "embezzled" or "effectively embezzled financial contributions by the Deck and Dock

workers." (Doc. 1-1, p. 17-18, ¶ 58(a)-(d).)

Plaintiffs stretch Georgia RICO law beyond its intended application and to an absurd degree. For GSA to be liable for conspiring to violate 29 U.S.C. §501(c), Plaintiffs must still establish a plausible connection between GSA's actions and the alleged embezzlement. Other than vague shot-gun pleading allegations, the Complaint fails to articulate how GSA, as a separate entity from the union, specifically participated in or facilitated any alleged embezzlement necessary to violate 29 U.S.C. §501(c). Without such specificity, Plaintiffs cannot establish a viable RICO conspiracy claim against GSA based on a predicate act GSA could not directly commit. Plaintiffs want this Court to read their Complaint in their favor, but only certain allegations while ignoring their shot-gun allegations and impermissible inferences. Plaintiffs cannot have it both ways. This Court should disregard any allegations which are facially inaccurate, conclusory, and implausible by law.

Plaintiffs do not deny they have presented a shotgun pleading, but attempt to explain their failures through their opposition. At the end, it is evident Plaintiffs do not allege any specific act of wire fraud in 2021 or 2019 by any defendant, but rather restate the text provided in 18 U.S.C. § 1343. (Doc. 1-1, p. 16-18, ¶ 56-57.)  Plaintiffs completely failed to allege GSA or any defendant committed any specific act of wire fraud in 2021 or 2019. (*Id.*) Plaintiffs do not allege any damage occurred because of any alleged wire fraud. (*Id.*)  Plaintiffs' singular generic, boilerplate allegation against GSA that in 2019, both "RICO Defendants made similar false statements in NLRB Case No. 10-CB-2288719…." regarding the "fairness and non-discriminatory nature of the separate seniority system" is insufficient to state any plausible basis for relief. (Doc. 1-1, p. 15, 20, ¶ 47, 59(d).)

Additionally, "[a]n essential element of any fraud claim is that defendant knew his representation was false." *First Fin. Sav. & Loan Ass'n v. Title Ins. Co. of Minn.*, 557 F. Supp. 654, 661 (N.D. Ga. 1982). This is equally true for the predicate acts of fraud. *See Rowe*, 181 F. Supp. 3d at 1190 ("An allegation that a defendant committed mail or wire fraud in furtherance of a RICO scheme requires a showing 'that the defendant held the requisite mens rea ... a "conscious knowing intent to defraud."') (quoting *Pelletier*, 921 F.2d at 1499 (quoting *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980)). In this case, the Complaint does not specify what representations were made nor does it allege any Defendant knew the representations were false. And, Plaintiffs cannot make such allegations because a Defendant's knowledge "cannot be merely conclusory and unsupported by any factual allegations." *Id.* (internal quotation marks omitted).

Further damaging to this claim is any allegation of wire fraud or making false statements in 2019 falls outside the five-year statute of limitation for civil RICO actions. *See,* O.C.G.A. § 16–14–8. Even when viewed in Plaintiffs' favor, the only allegations within the five-year statute of limitations are conclusory allegations of wire fraud in 2021, and the impossible embezzlement of funds GSA never had possession or control nor could be held accountable under federal law. For each of these reasons, Plaintiffs have failed to state a plausible claim based upon any fraud requiring dismissal of both their RICO and conspiracy claims.

### 2. Plaintiffs' Civil Conspiracy Claims fail because Plaintiffs did not Plead a Tort.

Count II and Count V allege claims stylized as civil conspiracies. However, because Plaintiffs did not plead any underlying tort of fraud or breach of fiduciary duty that can survive a motion to dismiss, they cannot maintain any claim for conspiracy even if not precluded by preemption. By definition, "discrimination," depriving "fair representation, equal benefits, and

equal employment opportunities," or an agreement to "circumvent the seniority system for job selection," are not torts. (Doc. 1-1, p. 22, 23, 28-29.) Any attempt to stretch the pleading to a vague "fraud" also fails Rule 9(b)'s particularity requirement. In sum, Plaintiffs' conspiracy claims are based on non-tort acts which fail to state a plausible claim for relief requiring dismissal.

**3.    Plaintiffs' Breach of Fiduciary Duty Claim fails because GSA is not a Fiduciary to Plaintiffs.**

GSA does not owe Plaintiffs any fiduciary duty, and nothing presented by Plaintiffs provides any basis to find otherwise. GSA does not represent Plaintiffs, it represents its "direct Employer members." (Doc. 1-1, pg. 39 (MOU).) Once again, Plaintiffs lump various defendants together, alleging both GSA and the union owe them a fiduciary duty. GSA does not represent Plaintiffs and does not hold any fiduciary duty to Plaintiffs. The failure to establish GSA's fiduciary duty is fatal to this claim.

## F.  Claims for Damages and Fees are Derivative and Cannot Stand Alone.

Plaintiffs' derivative claims for punitive damages and attorneys' fees cannot stand on their own when their substantive claims fail. *See, generally, Patel v. Diplomat 1419VA Hotels, LLC*, 856 S.E.2d 340, 348 (Ga. Ct. App. 2021); *Wright v. Apartment Investment and Mgmt. Co.*, 315 Ga. App. 587, 590 (1) (a) n.6, 726 S.E.2d 779 (2012) (noting derivative claims for punitive damages and attorney fees failed when underlying tort claims failed). Plaintiffs concede punitive damages is only available pursuant to Georgia's RICO statute, and when that claim is dismissed Plaintiffs' request for punitive damages or fees must be dismissed as well.

## II.    <u>CONCLUSION</u>

Plaintiffs' state-law claims must be dismissed because they are preempted by federal law and are time-barred because they were filed outside the six-month statute of limitation.

Additionally, no Plaintiff exhausted any required grievance proceedings required to bring these claims. Even if this Court determines dismissal is not warranted for each of these reasons, Plaintiffs' Complaint fails to state a claim against GSA based on the required elements for each claim and/or because they are time-barred under state law. Accordingly, GSA respectfully requests the Court dismiss the Complaint with prejudice and award GSA its fees and costs and any other relief deemed proper.

 Respectfully submitted this 28th day of October, 2025.

    **GORDON REES SCULLY**
    **MANSUKHANI, LLP**

    */s/ Theresa L. Nelson*
    Theresa Nelson
    Georgia Bar No. 601905
    55 Ivan Allen Jr Blvd. NW, Suite 750
    Atlanta, Georgia 30308
    Telephone: (404) 869-9054
    tnelson@grsm.com

    *Attorney for Georgia Stevedore Association.*

## CERTIFICATE OF SERVICE

This is to certify that I have filed the within and foregoing **DEFENDANT GEORGIA STEVEDORE ASSOCIATION'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS** using this Court's efiling system which will cause electronic service upon counsel of record to:

Andrew Y Coffman
PARKS, CHESIN & WALBERT, PC
1355 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
acoffman@pcwlawfirm.com

Bryan J. Henderson, Esq.
GUILMETTE HENDERSON, LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, GA 30309
bryan@guilmettehenderson.com

*Counsel for Plaintiffs*

This 28th day of October, 2025.

**GORDON REES SCULLY
MANSUKHANI, LLP**

*/s/ Theresa Nelson*
Theresa Nelson S
COUNSEL

17