UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| STEPHEN COWART, JOSEPH HURST, and KENNETH RAHN, JR., <br><br> Plaintiffs, <br><br> v. <br><br> ILA LOCAL 1475 CLERKS AND CHECKERS UNION, INC., ET AL, <br><br> Defendants. | Case No.: 4:25-cv-00199-RSB-CLR |

**REPLY TO PLAINTIFFS' RESPONSE TO
LOCAL UNION DEFENDANTS' MOTION TO DISMISS**

COMES NOW Defendants ILA Local 1475 Clerks and Checkers Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons ("Local Union Defendants"), by and through their undersigned counsel, and files this, their Reply to Plaintiffs' Response (Doc. 49) to Local Union Defendants' Motion to Dismiss (Doc. 25).

**I.      Introduction**.

In their Complaint, Plaintiffs brought a series of state-law claims against the Local Union Defendants alleging breaches of fiduciary duty, civil conspiracy, and violations of Georgia's RICO statute. Although framed as independent state causes of action, the gravamen of Plaintiffs' allegations concern the Local Union Defendants' conduct in their capacity as Plaintiffs' exclusive bargaining representative pursuant to multiple collective bargaining agreements ("CBAs") and related memorandums of understanding ("MOUs") (collectively "Contracts").

The Complaint challenges conduct that is inseparable from the Local Union Defendants' representational functions—specifically, the negotiation, interpretation, and administration of the Contracts governing Plaintiffs' terms and conditions of employment. Likewise, the Complaint requires the interpretation and application of the Contracts. Accordingly, because such claims are

completely preempted under (1) §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185(a) ("Section 301"), which mandates uniform federal interpretation of collective bargaining agreements; (2) the duty of fair representation ("DFR"), which occupies the field of a union's representational conduct; and (3) the Garmon doctrine, which bars state interference in conduct arguably governed by §§ 7 and 8 of the National Labor Relations Act ("NLRA").

Each of these doctrines serve the same core federal interests—ensuring national uniformity in labor law, preventing conflicting state regulation, and preserving the exclusive jurisdiction of federal law in matters of collective bargaining. Because all of these claims are preempted, Plaintiffs' claims fail as a matter of law as they are time-barred under the six-month statute of limitations applicable to hybrid § 301/DFR claims; they fail to state plausible causes of action against individual union officials, who are immune for actions taken in the scope of their representational duties; and Plaintiffs' requests for punitive damages and attorneys' fees are unsupported by governing law. For all these reasons, and for those stated in the Local Union Defendants' Motion to Dismiss (Doc. 25), this Court should dismiss Plaintiffs' Complaint.

**II.     Judicial Notice**.

The standard governing judicial notice of documents referenced in a motion to dismiss is well settled in this Circuit. Courts may consider documents attached to a motion to dismiss if the documents are (1) central to the plaintiff's claims and (2) their authenticity is not disputed.[1] This rule reflects the pragmatic recognition that when a plaintiff's claims depend on the contents of a document, the court should consider that document in evaluating the sufficiency of the pleadings.

---

[1] SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

a. **The Documents are Central to Plaintiffs' Claims**

Plaintiffs argue against judicial notice on the ground that "the Court need not interpret the terms of any collective-bargaining agreement in order to resolve the claims raised."[2] But this argument is nonsensical and cannot withstand scrutiny. The Complaint asserts that the Local Union Defendants negotiated labor contracts that adversely affected the rights of the Plaintiffs – of course the Court must analyze the terms of those contracts to evaluate Plaintiffs' claims.

Plaintiffs themselves attached two (2) of the relevant Contracts to their Complaint, the 2013 MOU and the 2019 MOU, and cited to those documents throughout the Complaint.[3] Two (2) of the documents for which the Local Union Defendants seek judicial notice – the Local Agreement and Master Contract, are explicitly incorporated by reference into the 2013 MOU or expressly relied upon.[4] It is thus hard to square these facts with Plaintiffs' assertions that documents which comprise Plaintiffs' main exhibits to their Complaint are nevertheless not "central" to their claims.

Likewise, with respect to the 2021 MOU, attached to the Motion to Dismiss (Doc. 25), the Complaint itself asserts that the fact that the Defendants "create[ed] a separate seniority classification for Deck and Dock Workers and impos[ed] unreasonable barriers to advancement (such as the 15,000 hour requirement to transition to conventional clerk work)," was "[c]entral" to the alleged improper "scheme" to "manipulat[e] the seniority system."[5] The offending (*according to Plaintiffs*) 15,000 hour requirement is itself housed in the 2021 MOU.[6] Given that Plaintiffs themselves assert that this requirement is "central" to the "scheme" at the heart of the Complaint, they cannot now be heard to assert that the full document housing that alleged improper

---

[2] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 4-5.
[3] Doc. 1-1, Complaint, Ex. A, 2013 MOU: P 8, ¶26.(a)-(c); P.9, ¶27; P.9, ¶28; P.11, ¶35; P. 23, ¶75(a); and P. 29, ¶94(a); and Ex. B, 2019 MOU: P.9, ¶¶28-29; P.10, ¶¶33-34; and P. 11, ¶35).
[4] Doc. 1-1, Complaint, Ex. A, 2013 MOU, ¶2 (Local Agreement); and ¶5 (Master Contract).
[5] Doc. 1-1, Complaint, P. 14, ¶45 (*first paragraph numbered 45*).
[6] Doc. 25-2, Aff. of Ricky DeLoach, att. thereto as Ex. C, 2021 MOU, P.36-38, ¶¶7-12.

requirement is nevertheless not "central" to the claims in the Complaint.[7] The final Contract for which Local Union Defendants seek judicial notice is the Clerks and Checkers ("CNC") Seniority Plan, which Plaintiffs reference in their Complaint at P. 13, ¶45, by asserting that there was "scheme" to create a "separate seniority classification for Deck and Dock Workers."[8]

Local Union Defendants have also proffered several documents issued by the National Labor Relations Board ("NLRB"), which describe the undisputed procedural background of how the Plaintiffs came to be represented by Local 1475 for purposes of collective bargaining.[9]

Thus, this proceeding, and its aftermath, are central to the allegations in the Complaint.[10] In any event, this Court is permitted to take judicial notice of undisputed NLRB documents concerning the facts and chronology of NLRB proceedings.[11]

At bottom, in Plaintiffs' own words, the "central" element to the "scheme" to discriminate against the Plaintiffs and segregate them into a separate seniority classifications rely entirely upon an analysis of the various related Contracts, and the interaction among them. Each of Plaintiffs' allegations arise within the framework of a unionized workplace governed by the Contracts. Plaintiffs' attempt to disavow the centrality of these Contracts in its Response, after expressly relying on them in their Complaint, cannot bar the Court from considering them now at the pleading stage under Eleventh Circuit precedent.[12] This principle applies with particular force in labor cases, where the plaintiff's claims "are inextricably intertwined with the interpretation of a collective bargaining agreement."[13]

---

[7] Doc. 25-2, Aff. of Ricky DeLoach, att. thereto as Ex. A, Local Agreement; and Ex. D, 2012-2018 Master Contract.
[8] Doc. 1-1, Complaint, P.14, ¶45. Plaintiffs also reference separate seniority systems for the CNC and DND workers throughout their Complaint at P 8, ¶26.a); P. 15, ¶47; and P. 23, ¶75.a).
[9] Doc. 25-2, Aff. of Ricky DeLoach, att. Thereto as Ex. E, the Electronic Docket and Ex. F, the Decision and Direction of Election, NLRB Case No. 10-RC-80061, June 20, 2012; and Ex. G, NLRB Order denying Review.
[10] Doc. 1-1, Complaint, P. 7, ¶¶22-23; and at P. 10, ¶31.
[11] Dodd v. Int'l Longshoremen's Association Local 1475, 2025 U.S. App. Lexis 20488 at 13-14 (11th Cir. Aug. 13, 2025).
[12] SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).
[13] Atwater v. National Football League Players Ass'n, 626 F.3d 1170, 1177 (11th Cir. 2010).

    b. **Plaintiffs do not Dispute the Authenticity of the Documents.**

Plaintiffs have not challenged the authenticity of any document the Local Union Defendants asked this Court to judicially notice. This undisputed authenticity satisfies the second prong of the SFM Holdings test. The Eleventh Circuit has made clear that: "where the authenticity of a document is not contested, the court may properly consider it in ruling on a motion to dismiss."[14] Because the documents are central to Plaintiffs' claims and uncontested in authenticity, the Court may take judicial notice of them and should deny Plaintiffs' request to exclude them.

**III.   Plaintiffs' Claims Are Preempted by Federal Labor Law**

Plaintiffs' attempt to repackage what are, in essence, claims arising from Section 301 contracts negotiated by Plaintiffs' exclusive collective bargaining agent into Georgia tort causes of action. However, the Supreme Court and Eleventh Circuit have rejected efforts to re-characterize disputes that are fundamentally governed by federal labor law.[15] Federal labor-law preemption preserves the exclusive domain of federal authority over collective bargaining, ensures national uniformity, and prevents state regulation from undermining that uniformity.[16] Each of Plaintiffs' claims are preempted under three (3) complementary doctrines: (1) complete preemption under § 301 of the LMRA; (2) the DFR; and (3) Garmon preemption under the NLRA.

    a. **Preemption and Uniformity of Federal Labor Law**.

Section 301 preemption exists to "ensure uniform interpretation of collective-bargaining agreements" and to avoid "inconsistent local rules."[17]   Plaintiffs posit that the fiduciary duty allegedly owed to them under Georgia law should be "determined on a case-by-case basis".[18] Plaintiffs' contention that Georgia fiduciary law governs the representational relationship ignores

---

[14] Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).
[15] Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-11 (1985).
[16] Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962).
[17] Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404-06 (1988); Lucas Flour, 369 U.S. at 103-04.
[18] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 8.

that the scope of a union's duty to its members is exclusively a matter of federal law. Allowing each state to impose divergent fiduciary standards would create the very regulatory patchwork Congress sought to preclude.[19] However, the Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law."[20] Thus, any attempt to impose state-law duties on a union on a case-by-case basis for its representational conduct would undermine national uniformity and directly conflict with settled precedent.

    b. **Plaintiffs' Claims Are Subject to §301 Preemption**

        i. **The Claims Depend on Interpretation of the MOUs**

The Eleventh Circuit has emphasized that where claims are "founded directly on rights created by collective-bargaining agreements" or "substantially dependent upon analysis of a collective-bargaining agreement," they must proceed, if at all, under § 301 federal jurisdiction.[21]

Here, Plaintiffs' allegations revolve around the negotiation, structure, and implementation of the 2013 and 2019 MOUs (as amended by the 2021 MOU), along with the incorporated Local Agreement and the Master Contract. These agreements define **seniority** classifications, dispatch rules, wage scales, and grievance procedures—all of which Plaintiffs claim were manipulated or misapplied. Determining whether the Local Union Defendants breached any duty it owed to Plaintiffs, whether under state or federal law, necessarily requires those provisions be interpreted.

In arguing that their claims are not preempted by §301, Plaintiffs appear to rely on two cases - Allis-Chalmers, and on Livadas v. Bradshaw, 512 U.S. 107 (1994).[22] Even a cursory examination of those two (2) cases demonstrate that they fully support federal preemption here.

---

[19] Rawson v. United Steelworkers, 495 U.S. 362, 372-74 (1990).
[20] Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).
[21] Atwater v. National Football League Players Ass'n, 626 F.3d 1170, 1176-1177 (11th Cir. 2010).
[22] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 5-7.

First, Plaintiffs assert that Allis-Chalmers holds that "[t]he full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis."[23] While Plaintiff's citation is accurate, they neglect to state the Court's actual holding in the case, which appears in the very next sentence after the language quoted by Plaintiffs: "We do hold that, when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a Section 301 claim, . . ., or dismissed as preempted by federal labor contract law."[24] And the result in Allis-Chalmers was that the state tort of bad faith handling of an insurance claim arising out of a collective bargaining agreement was preempted.

Livadas is likewise of no help to Plaintiffs. That case dealt with a California state law requiring employers to pay all wages due immediately upon discharge. The California Labor Commission was charged with enforcement of the state statutory scheme. Livadas did not receive her paycheck and the Commissioner refused to enforce her claim because her employment was covered by a collective bargaining agreement and an arbitration clause.[25]

Livadas sued and claimed that the Commissioner's refusal to enforce her claim violated her rights under 42 U.S.C. § 1983. The Supreme Court found that the Commissioner's policy was preempted by federal law because it interfered with rights protected under the NLRA. That is, the Supreme Court found that the Commissioner's refusal to enforce wage claims for unionized employees penalized them for exercising federally protected rights (i.e., being part of a union with an arbitration clause). *On that issue*, the Court found that they were being illegally penalized and found NLRA preemption because the California policy conflicted with the NLRA.[26]

---

[23] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 7.
[24] Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985).
[25] Livadas v. Bradshaw, 512 U.S. 107, 110-111 (1994).
[26] Livadas v. Bradshaw, 512 U.S. 107, 116-121 (1994).

However, on the relevant issue here, that of LMRA §301 preemption, the Court found that §301 preemption was not implicated because the only issue in the case was whether Livadas was paid on time. A calendar was the only reference needed outside the pleadings, not the CBA because neither the amount being paid, nor the arbitration clause, were at issue. Livadas's claim was independent of the CBA — it involved a statutory right to timely wages, not a dispute dependent on CBA interpretation. The Court held that: "the mere need to 'look to the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by §301."[27] Therefore, Plaintiffs' reliance on Livadas as supporting non-preemption under §301 is misplaced. The issues here cannot be analyzed under state law with reference to a calendar. Here, Plaintiffs' rights exist, if at all, solely by virtue of the Contracts, and adjudicating their claims would compel the Court to construe those Contracts. This case thus falls squarely within § 301 preemption.

    ii.    **Preemption Applies Because the Contracts Must be Interpreted**

Plaintiffs allege that Defendants defrauded them of full wages and benefits, manipulated the seniority system, created a dual seniority system, imposed unfair discipline, mishandled appeals and grievances, and implemented discriminatory provisions in the MOUs.[28] Each of the alleged conspiratorial acts arise directly from these collectively bargained provisions and Plaintiffs' claims are inextricably intertwined with the interpretation and application of the various Section 301 agreements which Plaintiffs' terms and conditions of employment.[29]

Notably, one cannot simply "look at" these documents to understand the rights and benefits which flow to the Plaintiffs, and how those rights and benefits are materially different from those afforded to workers in the CNC job classification. For example, Plaintiffs claim that there was something improper about the 2013 MOU treating them as "'new hires' regardless of prior

---

[27] Livadas v. Bradshaw, 512 U.S. 107, 124-125.
[28] Doc. 1-1, Complaint, P. 21-22, ¶¶72-73; P. 17-18, ¶58; P. 22, ¶75(a)-(c); and P. 27, ¶91.
[29] Retail Clerks Ass'n v. Lion Dry Goods, 369 U.S. 17, 28-29 (1962).

experience."[30] But in order to determine whether that is so, it is necessary to interpret the Master Contract wage progression referenced in the 2013 MOU (P.3, ¶5). The Master Contract defines "new employees" as individuals "who enter the industry on or after October 1, 2012."[31] To understand whether Plaintiffs' treatment as new employees was improper requires interpretation of the phrase "enter the industry," a term which is by no means clear from the Master Contract.[32]

Likewise, Plaintiffs assert that they were "exploited" because "[t]heir contribution rates to pension and welfare benefits were set at lower rates than their Clerk and Checker counterparts,"[33] because those rates were "set at breakbulk rates until September 30, 2016, further disadvantaging Deck and Dock workers…"[34] However, any determination whether the allegedly improper reduced contribution rates had an impact on the benefits actually received by Plaintiffs requires the analysis of the various provisions of the Contracts that set forth the benefits provided to the Plaintiffs.[35]

Regarding *seniority*, the basis of all of the conspiracy counts in the Complaint is the meaning and application of the terms of the 2013 MOU which created List A and related provisions of the 2013 MO.[36] Analysis of whether the Local Union Defendants' conduct was improper must start with the interpretation of the seniority rights which were granted to the Plaintiffs through the 2013 MOU. Further, Plaintiffs allege the 2019 MOU created a "discriminatory dual seniority system"[37]—again, interpretation is necessary of both seniority plans (2019 MOU and the CNC Seniority Plan) because the 2019 MOU: (1) created more detailed seniority classifications (Class A through Class Z17); (2) clearly recognized DND workers as a separate seniority system from

---

[30] Doc. 1-1, Complaint, P. 9, ¶27.
[31] Doc. 25-2, Aff. of Ricky DeLoach, att. thereto as Ex. D, 2012-2018 Master Contract, P. 50, Art. II, ¶2.
[32] Johnson v. Humphreys, 949 F.3d 413, 416-17 (8th Cir. 2020) (state law claim preempted because Court had to interpret a "term unique to the CBA" where that determination is "inextricably bound up in the *prima facie* case")
[33] Doc. 1-1, Complaint, P. 13, ¶44.
[34] Doc. 1-1, Complaint, P. 9, ¶27.
[35] Doc. 25-2, Aff. of Ricky DeLoach, att. thereto as Ex. A, Local Agreement, P.8-14; and Ex. D, 2012-2018 Master Contract, P. 59-66.
[36] Doc. 1-1, Complaint, P. 27-29 ¶¶90-96.
[37] Doc. 1-1, Complaint, P. 23-24 ¶80(e).

CNC workers;[38] and (3) mandated seniority DND workers have priority to DND jobs over CNC workers.[39] Additionally, the 2021 MOU modifies the 2019 MOU and the CNC Seniority Plan,[40] to **permit** DND workers to obtain CNC seniority—as such interpretation of that document, and how all three (3) of the seniority-based MOUs interact, is unavoidable.

Additionally, Plaintiffs claim they *appealed* and sought to make changes to the 2013 MOU.[41] The 2013 MOU must be interpreted to determine whether it allowed for modification (2013 MOU, ¶ 15 (*agreement modifications*)). Likewise, Plaintiffs reference the failure to process *grievances* filed with the Seniority Board.[42] The 2019 MOU must be interpreted to determine what the Seniority Board is and the scope of its power regarding disputes, appeals, grievance, and arbitration procedures. (2019 MOU, ¶¶ 1-2). The Local Agreement must also be interpreted because the 2019 MOU subjects all disputes to the grievance procedure set forth therein.[43]

Clearly, all of Plaintiffs' claims referenced herein are *completely* preempted under §301, as the 2013 MOU, 2019 MOU, Local Agreement, Master Contract, and the 2021 MOU must all be interpreted. This is not the situation where the MOUs are tangentially related to this case – they are inextricably intertwined with rights and obligations defined therein and thus Plaintiffs' claims are preempted. Each of Plaintiffs' allegations requires the Court to determine what the Contracts provide with respect to the terms and conditions provided to Plaintiffs. In these circumstances, the federal courts have consistently found such state claims to be preempted.[44]

---

[38] Doc. 1-1, Complaint, P. 13 ¶45.
[39] Doc. 1-1, Complaint, Ex. B, 2019 DND Seniority Plan, P. 2-5.
[40] Doc. 25-2, Aff. of Ricky DeLoach, att. thereto as Ex. C, 2021 MOU.
[41] Doc. 1-1, Complaint, P. 10 ¶35.
[42] Doc. 1-1, Complaint, P. 26 ¶85(d).
[43] Doc. 1-1, Complaint, Ex. B, 2019 DND Seniority Plan, P. 1, ¶2.D.
[44] *See* Atwater, 626 F.2d at 1183-84 (Georgia state breach of fiduciary duty claim preempted where alleged duty "directly arise[s] from the CBA's mandate" and resolution of claim is "dependent on the interpretation of the CBA's language"); Adkins v. General Motors Corp., 946 F.2d 1201, 1208 (6th Cir. 1991) (state fraud claims completely preempted where "rights at issue are 'created by collective-bargaining agreements'"); Towns v. Dirs. Guild of Am., 2020 U.S. District Lexis 123826 *12-14 (N.D. Ga. July 15, 2020) (Georgia state tortious interference and breach of fiduciary duty claims preempted where "an interpretation and application of the collective bargaining agreement" is

### c. **Plaintiffs' Claims Are Preempted by the Duty of Fair Representation Doctrine**

#### i. **Plaintiffs' Allegations Fall Squarely Within the Scope of the DFR**

A union's representational conduct is governed exclusively by the federal DFR, which requires the union to serve the interests of all bargaining unit members without hostility or discrimination, to act in complete good faith, and to avoid arbitrary conduct.[45] Courts have consistently held that claims such as we have here for breach of state fiduciary duty laws that challenge the union's conduct in its representative capacity are preempted.

The DFR applies whenever a union acts as the exclusive representative of the bargaining unit, including in negotiating and administering collective bargaining agreements and claims that challenge the union's representational conduct must be brought as DFR claims under federal law.[46]

Plaintiffs' allegations—that the Local Union Defendants defrauded them of full wages and benefits, manipulated seniority, created a dual seniority system, imposed unfair discipline, mishandled appeals and grievances, and implemented discriminatory provisions in the MOUs—all fall squarely within this doctrine. These are classic DFR claims — the claims concern the adequacy and fairness of the Local Union Defendants' representation, not any independent duty arising under Georgia law.[47] Plaintiffs' attempts to relabel these claims as "breach of fiduciary duty" or "civil conspiracy" claims under Georgia law does not avoid preemption.

In this regard, Plaintiffs assert that the Local Union Defendants "have no authority from this Circuit" that state tort claims are preempted by the DFR.[48] Notably, Plaintiffs do not explain

---

required); Deakins v. United States Postal Service, 146 F.Supp.2d 1290, 1293 (M.D. Fla. 2001) (state law claims preempted where they "are either based squarely on the collective bargaining agreement at issue or require the Court to interpret the terms of the agreement"); Roberts v. Walt Disney World Co., 908 F. Supp.913, 916 (M.D. Fla. 1995) (civil conspiracy claim is preempted because it "requires interpretation of the collective bargaining agreement").
[45] Vaca v. Sipes, 386 U.S. 171, 177 (1967).
[46] United Steelworkers v. Rawson, 495 U.S. 362, 372 (1990).
[47] United Steelworkers v. Rawson, 495 U.S. 362, 372 (1990) ("[T]he duty of fair representation is a federal duty, which the courts have fashioned from national labor statutes.").
[48] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 9.

why the reasoning of the two out of Circuit cases cited by Local Union Defendants is incorrect,[49] or otherwise cite to authority (in or out of the 11th Circuit) to the contrary. Perhaps this is because it has long been recognized in this Circuit that the very types of claims asserted here by Plaintiffs – at bottom, claims that the Local Union Defendants' conduct in negotiating the 2013 MOU and related MOUs was "arbitrary, irrational or undertaken in bad faith" – is the very definition of a DFR claim. *See* Parker v. Connors Steel Co., 855 F.2d 1510, 1520 (11th Circuit 1988). Finally, courts within this Circuit have, in fact, held that state tort claims arising out of a labor organization's status as exclusive representative are preempted by the federal DFR.[50]

## ii. Georgia Fiduciary-Duty Claims Are Preempted by the DFR

Plaintiffs' attempt to import Georgia's fiduciary-duty statute, O.C.G.A. § 23-2-58,[51] into the union-bargaining unit member relationship is preempted for two (2) reasons. *First*, the statute regulates only traditional fiduciary relationships — partners, principals and agents, guardians and wards, trustees and beneficiaries and "similar fiduciary relationships" — and does not encompass labor unions acting in their statutory representative capacity. The statute does not specifically list the relationship between a labor organization and a bargaining unit member, nor is the relationship a "similar relationship" to those listed. If the state legislature attempted to do so, it would be plainly

---

[49] Walsh v. Int'l Bhd. of Elec. Workers, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014); Smith v. Local Union No. 110, IBEW, 681 F. Supp. 2d 995 (D. Minn. 2010).

[50] Miller v. King, 2015 U.S. District Lexis 18663 at *7-8 (N.D. Ala. Feb. 17, 2015) ("[b]ecause federal law so thoroughly defines a union's rights and duties when representing its members, any state law attempting to regulate union conduct within the concern of the federal [DFR] is considered preempted"); Gachett v. Retail Wholesale Dep't Store Union, 2013 U.S. Dist. Lexis 45342 at *16-17 (M.D. Ala. Mar. 29, 2013) (court finds that "state law claims amount to a claim that the Union breached its duty to fairly represent [the plaintiff]" and are "therefore, preempted by federal law); Roberts v. Walt Disney World Co., 908 F. Supp. 913, 916 (M.D. Fla. 1995) ("'if plaintiffs have been betrayed by their employer and their union and cheated out of valuable seniority rights . . . their remedy is a timely suit for unfair representation/unfair labor practices'") (*citing* Adkins).

[51] O.C.G.A. § 23-2-58: "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary administrator and heir, legatee, devisee, or beneficiary; trustee and beneficiary; and similar fiduciary relationships."

preempted from attempting to legislate in this area. Likewise, Plaintiffs cannot rewrite the Georgia statute to include the relationship between a union and a bargaining unit member as a "similar fiduciary relationship" because it is not similar. *Second*, even if Georgia's fiduciary-duty statute did regulate the relationship,[52] applying a state fiduciary standard to union conduct would conflict with the uniform federal DFR standard, precisely what federal preemption law forbids.

According to Plaintiffs, "[i]t is possible for a defendant to comply with the DFR standard but run afoul of the Georgia fiduciary standard…"[53] This is precisely why the claims must be preempted by federal labor law, lest each Court in Georgia on a "case-by-case basis" redefine what the duty is that a labor organization owes its bargaining unit members. Permitting a state to impose a different duty on a union in its representative capacity would undermine the uniform federal standard and subject unions to conflicting state obligations. The Supreme Court has expressly rejected the application of inconsistent state-law duties to union conduct governed by the DFR.[54]

    d. **Plaintiffs' Claims Are Preempted Under Garmon**

Under San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959), state regulation is preempted where the conduct at issue is "arguably subject to § 7 or § 8 of the NLRA." The Garmon doctrine preserves the NLRB's exclusive jurisdiction over labor-management relations and prohibits state interference in the collective-bargaining process. The Eleventh Circuit recognizes that Garmon preemption applies broadly to any claim challenging representational conduct that falls within the NLRA's scope.[55] The conduct alleged here—negotiating MOUs, enforcing seniority provisions, administering grievance procedures, and representing employees before the employer—lies at the very heart of collective bargaining and is thus subject to the

---

[52] There is no authority cited by Plaintiffs in their Response holding that a claim under the Georgia statute can be brought by a bargaining unit member against his union.
[53] Doc. 49, Plaintiffs' Response to Local Union Defendants' Motion to Dismiss, P. 9 (*last 2 full paragraphs*).
[54] United Steelworkers v. Rawson, 495 U.S. 362, 372-374 (1990).
[55] Int'l Longshoremen's Ass'n v. Davis, 476 U.S. 380, 393 (1986).

NLRA. None of the narrow "local feeling and responsibility" exceptions apply. See <u>Farmer v. United Bhd. of Carpenters</u>, 430 U.S. 290, 296-97 (1977) (limiting exceptions to extreme cases of violence or defamation unrelated to bargaining). Plaintiffs' state-law RICO, conspiracy, and fiduciary claims therefore intrude on a field Congress has reserved exclusively to federal labor law and the NLRB. Here, the alleged misconduct lies at the heart of the collective bargaining process itself. Federal labor law occupies this field, and the NLRB has primary jurisdiction. Accordingly, Plaintiffs' claims are preempted under <u>Garmon</u> and must be dismissed.[56]

      e. **Plaintiffs' Claims Are Governed by the Six-Month NLRA Statute of Limitations.**

Because Plaintiffs' claims are preempted and must be treated as § 301/DFR claims, they are governed by the six-month statute of limitations of § 10(b) of the NLRA, 29 U.S.C. § 160(b).[57] The alleged conduct underlying the Complaint occurred nearly a decade before filing, far outside the permissible period. As the former Fifth Circuit explained, the limitations rule exists "to prevent persons from being brought to book on stale charges and to promote industrial stability."[58] Therefore, Plaintiffs' Complaint must be dismissed in its entirety.

      f. **Individual Union Officials Are Immune from Liability**

Because Plaintiffs' claims are preempted and must be treated as § 301/DFR claims, the individual union officials are not personally liable for acts undertaken in their representative capacity.[59] Plaintiffs do not argue in their Response any conduct by any individually named union

---

[56] Presumably in recognition of the NLRB's jurisdiction over the underlying claims in this matter, the Complaint contains allegations claiming that NLRB investigations into unfair labor practice charges over the Local Union Defendants' conduct were somehow tainted through the making of "false, fictious, or fraudulent statements" to the NLRB. See Complaint at Paragraph 59 (a) – (e); Paragraph 75(c). Regardless of Plaintiffs' intentions in this regard, there can be no question that the NLRB has primary jurisdiction over claims relating to the investigations undertaken by the agency and its representatives.
[57] <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 169-70 (1983); <u>Gross v. UPS</u>, 2024 U.S. App. Lexis 7233 at * 9 (11th Cir. Mar. 27, 2024); <u>Proudfoot v. Seafarer's Int'l Union</u>, 779 F.2d 1558, 1559-60 (11th Cir. 1986); <u>Jackson v. U.S. Steel Corp.</u>, 2018 U.S. Dist. Lexis 68542 *21-23 (N.D. Ala. April 24, 2018).
[58] <u>NLRB v. Auto Warehousers, Inc.</u>, 571 F.2d 860, 863 (5th Cir. 1978), *cjting* <u>Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.)</u>, 362 U.S. 411, 424-425 (1960).
[59] <u>Atkinson v. Sinclair Ref. Co.</u>, 370 U.S. 238, 247-49 (1962).

official which allegedly occurred outside the scope of their official duties. Consequently, all claims against individual defendants must be dismissed.

      g. **Punitive Damages and Attorneys' Fees Are Unavailable**

Plaintiffs' punitive damages (Count VI) and attorneys' fees (Count VII) claims should be dismissed. Plaintiffs in their response simply argue that if the claims are not preempted, then these remedies are available under Georgia law. In that regard, the Local Union Defendants state that because the Court should construe the Complaint as a hybrid §301/DFR claim, neither attorney fees nor punitive damages may be awarded as stated in the Motion to Dismiss (Doc. 25).[60] Accordingly, Plaintiffs' Counts VI and VII must be dismissed.

## IV. Conclusion

For the foregoing reasons, based upon the facts and applicable law stated herein and in its original Motion to Dismiss and Brief, the Local Union Defendants respectfully pray that their Motion be granted and that Plaintiffs' Complaint against them be dismissed with prejudice, with all costs assessed against Plaintiffs, and for such other and further relief as this Honorable Court deems just and proper.

This 28th day of October 2025.

                                        CHARLES HERMAN LAW

                                        /s/ Charles Herman
                                        Charles Herman
                                        Georgia Bar No. 142852
                                        *Attorney for ILA Local 1475 Clerks and Checkers Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons*

127 Abercorn Street, Suite 208
Savannah, Georgia 31401
Phone: (912) 244-3999; (912) 257-7301 Facsimile
charles@charleshermanlaw.com

---

[60] Towns v. Dirs. Guild of Am., 2020 U.S. District Lexis 123826 *18 (N.D. Ga. July 15, 2020).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| STEPHEN COWART, JOSEPH HURST, and ) <br> KENNETH RAHN, JR., ) <br>   ) <br> **Plaintiffs,** ) <br>   ) <br> v. ) <br>   ) <br> ILA LOCAL 1475 CLERKS AND ) <br> CHECKERS UNION, INC., ET AL, ) <br>   ) <br> **Defendants.** ) | Case No.: 4:25-cv-00199-RSB-CLR |

### *CERTIFICATE OF SERVICE*

This is to certify that I have this day served a copy of Defendants ILA Local 1475 Clerks and Checkers Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons' (Local Union Defendants) Reply to Plaintiffs' Response (Doc. 49) to Local Union Defendants' Motion to Dismiss (Doc. 25) via electronic mail to Plaintiffs' attorney as follows:

Bryan J. Henderson, Esq.
Guilmette Henderson, LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, GA 30309
bryan@guilmettehenderson.com

This 28th day of October 2025.

CHARLES HERMAN LAW

/s/ Charles Herman
Charles Herman
Georgia Bar No. 142852
*Attorney for ILA Local 1475 Clerks and Checkers Union, Inc., Ricky DeLoach, Frank Ryan, Jr., Steve Sims, and Michael Parsons*

127 Abercorn Street, Suite 208
Savannah, Georgia 31401
Phone: (912) 244-3999; (912) 257-7301 Facsimile
charles@charleshermanlaw.com